## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

T. DAVID THOMPSON, Individually and
As the Personal Representative of the
Estate of CAROLYN ROSE BENNETT,

      Plaintiff,

vs.                                                                No. CIV 05-1331 JB/LCS

THI OF NEW MEXICO AT CASA ARENA
BLANCA, LLC d/b/a CASA ARENA
BLANCA NURSING CENTER,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Motion to Dismiss and Compel Adherence to the Arbitration Agreement, filed January 17, 2006 (Doc. 3)("Motion to Dismiss").   The Court held a hearing on the motion on March 23, 2006.  The primary issues are: (i) whether the arbitration provision in the Admission Contract between Plaintiff David Thompson and Defendant THI of New Mexico at Casa Arena Blanca, LLC ("Casa Arena") created a valid agreement to arbitrate their dispute; and (ii) whether the arbitration provision is unenforceable under theories of law and equity Thompson advances.  Because the Court concludes that the arbitration provision is valid, and that Thompson has not advanced a sound reason for the Court not to enforce the arbitration provision, the Court will grant the motion to enforce the arbitration provision and dismiss Thompson's Amended Complaint.  <u>See</u> Amended Complaint, filed January 9, 2006 (Doc. 2).

## <u>FACTUAL BACKGROUND</u>

Thompson and his deceased wife, Carolyn Rose Bennett, were residents of Alamagordo, New

Mexico.  In early February of 2004, Thompson found his wife, Bennett, slumped over at home, feared she had suffered a stroke, and took her to Gerald Champion Memorial Medical Center.  See Affidavit of T. David Thompson ¶¶ 2-3, at 1 (executed February 6, 2006)("Thompson Affidavit"). Physicians at the hospital diagnosed Thompson's wife as having Alzheimer's dementia with periods of confusion and delirium, cerebral atrophy, and hypothyroidism.  See id. ¶ 4, at 1.

As a condition of these diseases, Thompson's wife suffered frequent periods of confusion, disorientation, and agitation; Thompson realized that he would be unable to care for his wife by himself at home, and concluded that she would require institutional care.  See id. ¶ 5, at 2.  In evaluating his options for placing his wife in a long-term care facility after her discharge from the hospital, Thompson researched three facilities in Alamogordo that advertised they were able to care for patients who were diagnosed with Alzheimer's dementia.  See id. ¶ 6, at 2.  Thompson visited each of the three long-term care facilities and contacted individuals in the community who had experience with the facilities to determine which facility could ensure his wife's health and safety. See id. ¶ 7, at 2.

Thompson concluded that only one of the three facilities, Casa Arena, was capable of providing his wife with the requisite level of care and safety required by her diagnosis.  See id. ¶ 12, at 3.  Casa Arena had a secure Alzheimers unit with specially trained staff that conducted daily therapies and treatments, and had registered nurses available to provide care twenty-four hours a day, seven days a week.  See id. ¶ 8, at 2.  Thompson concluded the other two facilities were not appropriate long-term care providers for his wife, because one had closed its Alzheimers section and the other required that all patients be able to perform their daily living activities without assistance, something Thompson's wife could not do.  See id. ¶¶ 9-10, at 2-3.  Thompson knew that there were

other long-term care options for Alzheimers patients available in Las Cruces, New Mexico, but he "hated" to have his wife institutionalized so far from home.  Id. ¶ 11, at 3.

Thompson contends that, given the unavailability of other options for institutionalization, he had no choice but to sign all of the documents necessary for his wife's admission to Casa Arena, including the Admission Contract.  See id. ¶ 13, at 3.  Thompson did not negotiate any of the terms of the Admission Contract, nor did he discuss those terms with any of the individuals at Casa Arena. See id. ¶ 13, at 3.  Thompson represents that it was his understanding his wife would not be admitted to Casa Arena unless and until he signed all of the documents, including the Admission Contract that contained an arbitration provision, presented to him upon her transfer from the hospital.  See id. ¶ 14, at 4.  Thompson does not dispute that he reviewed the Admission Contract, although he may not have "understood" the ramification of each provision.  Plaintiff's Response and Objections to Defendant's Motion to Dismiss and Compel Arbitration at 16, filed February 6, 2006 (Doc. 6)("Response").

There is no dispute that Casa Arena was the drafter of the standardized Admission Contract that Thompson signed.  In signing the Admission Contract, Thompson agreed to pay for services provided to his wife unless and until Casa Arena – identified in the Admission Contract as the "Health Care Center" – determined that it "cannot provide appropriate care" to Bennett and facilitated her "involuntary transfer or discharge" to another facility or she died.  See Admission Contract, Art. IV ¶ 2, filed January 17, 2006 (Doc. 4).  Casa Arena agreed to provide services to Bennett, with the caveat that, "because the provision of health care services is a personalized service requiring interventions on many occasions by many persons, Patient/Resident acknowledges that the standards and/or representations will not be satisfied from time to time."  Id. Art. V ¶ 3.  Casa Arena

-3-

reserved the right to terminate the contract on the date of the involuntary transfer or discharge. <u>See</u> <u>id.</u>

The Admission Contract's arbitration provision is immediately above the signature line, is labeled "**ARBITRATION**" in bold, upper case letters, and is in the same font and type size as the other provisions in the Admission Contract. <u>Id.</u> Art. VI.  The arbitration provision in the Admission Contract provides:

> Pursuant to the Federal Arbitration Act, any action, dispute, claim, or controversy of any kind (e.g., whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of healthcare services, any agreement between the parties, the provision of any other goods or services by the Health Care Center or other goods or services by the Health Care Center or other transactions, contracts or agreements of any kind whatsoever, any past, present or future incidents, omissions, acts, errors, practices, or occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").

<u>Id.</u> Art. VI.  Thompson, as a fiduciary for Bennett, signed the Arbitration Agreement on February 9, 2004.  <u>See</u> Admission Contract at 6.

In January, 2005, after missing several medication doses, Thompson's wife suffered a seizure at Casa Arena, fell, fractured her hip, and later died.  <u>See</u> Amended Complaint ¶ 30, at 6..

## PROCEDURAL BACKGROUND

Thompson filed his Complaint on December 21, 2005.  <u>See</u> Doc. 1.  Thompson filed an Amended Complaint on January 10, 2006.  <u>See</u> Doc. 2.  In the Amended Complaint, Thompson alleges that the negligent and reckless conduct of Casa Arena's agents and employees constitute violations of state and federal law relevant to nursing facilities, abuse and neglect as defined under

the New Mexico Abuse and Neglect Act, breach of fiduciary duty, negligence, per se negligence, and breach of contract.

Casa Arena moves the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, the Federal Arbitration Act of 1925 ("FAA"), 9 U.S.C. §§ 1 to 16, and the New Mexico Uniform Arbitration Act, N.M. Stat. Ann. §§ 44-7A-1 through 44-7A-32 ("UAA"), to dismiss both the Complaint and the Amended Complaint with prejudice, and to compel adherence to the arbitration agreement. Casa Arena requests that, pursuant to the FAA, the Court direct Thompson to adhere to the Arbitration Agreement that he signed. Case Arena states that it is entering its appearance in this matter for the sole purpose of this Motion.[1]  See Motion to Dismiss at 1.

Thompson submitted his Affidavit, which included facts that were not alleged in his Complaint, with his Response. Casa Arena did not object to the submission of Thompson's Affidavit in its Reply or at the hearing held on March 23, 2006.

## LAW REGARDING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION

A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. See Scheuer v. Rhodes, 416 U.S.

---

[1]The Local Civil Rules for the District of New Mexico  provide that an attorney may not appear in a limited manner except by Court order.  See D.N.M.LR-Civ. 83.4(c).

232, 236 (1974).

An amended complaint supersedes the original complaint and renders the original complaint of no legal effect unless it is specifically incorporated therein.  See Graham v. City of Oklahoma City, 859 F.2d 142, 144 (10th Cir. 1988).  The Amended Complaint does not specifically incorporate the original Complaint.  Consequently, that portion of Casa Arena's Motion seeking to dismiss the Complaint is moot.

## LAW REGARDING COMPELLING ADHERENCE TO AN ARBITRATION AGREEMENT

Thompson does not dispute that the FAA and the UAA portend a policy favoring arbitration agreements.  Both the FAA and the state arbitration act require that courts enforce valid arbitration agreements and that those agreements' terms control.

### 1.    Federal Law.

The FAA governs motions to compel arbitration involving contracts related to commerce. See 9 U.S.C. §§ 1-16.  Section 2 of the Act provides that an agreement, in writing, to submit a controversy arising out of a contract to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If a party is aggrieved by the refusal of another to arbitrate under a written agreement, the court, upon petition, "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

In 1925, Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision.  Congress designed the FAA to

"overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts."  Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. 468, 474 (1989)(internal citation omitted).  The Supreme Court of the United States has echoed Congress and acknowledged that the FAA reflects a strong public policy in favor of arbitration, especially where there is an agreement by both parties to arbitrate any controversies.  See Southland Corporation v. Keating, 465 U.S. 1, 10 (1984)("Congress declared a national policy favoring arbitration.").

Federal courts have been unambiguous on this issue, stating that written instruments pertaining to mandatory arbitration are not only enforceable, but are favored.  Indeed, the Supreme Court has construed the FAA to leave "no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  When the applicability of arbitration is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

**2.      New Mexico Law.**

The UAA provides that an agreement to submit any controversy arising between the parties to arbitration is "valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract."  N.M. Stat. Ann. § 44-7A-7(a).  If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate.  See N.M. Stat. Ann. § 44-7A-8(a).  Where the provision for arbitration is disputed, the court's function is to determine

whether there is an agreement to arbitrate and to order arbitration where an agreement is found.  Id.

Similar to the federal courts' interpretation of the FAA, courts in New Mexico have viewed the UAA as an expression of a public policy favoring arbitration.  See United Tech. & Res., Inc. v. Dar Al Islam, 115 N.M. 1, 3, 846 P.2d 307, 309 (1993)("The legislature and the courts of New Mexico 'have expressed a strong policy preference for resolution of disputes by arbitration.'").  More specifically, New Mexico courts have construed the legislative purpose of the act as an attempt to reduce the caseload of the courts.  See Bd. of Educ. Taos Mun. Sch. v. Architects, Taos, 103 N.M. 462, 463, 709 P.2d 184,186 (1985)("A concern for preserving scarce judicial resources lies at the heart of the preference for arbitration."); Dairyland Ins. Co. v. Rose, 92 N.M. 527, 531, 591 P.2d 281, 285 (1979).  In New Mexico, when the court finds that an arbitration agreement exists, then, in accordance with the UAA, the court has a duty to enforce the provisions of the agreement and order adherence to that arbitration agreement.  See Bernalillo County Med. Ctr. Employee's Ass'n Local 2370 v. Cancelosi, 92 N.M. 307, 308, 587 P.2d 960, 961 (1978).

Consistent with this understanding, the Supreme Court of New Mexico has interpreted the UAA to limit the court's role to determining if an arbitration agreement exists and, if so, to order the parties to arbitration.

> When a broad and general arbitration clause is used, as in this case, the court should be very reluctant to interpose itself between the parties and the arbitration upon which they have agreed. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused.

K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. 492, 494, 576 P.2d 752, 754 (1978).  In

New Mexico, parties entering a contract providing for the resolution of disputes through arbitration are bound by their agreement to arbitrate. See Christmas v. Cimarron Realty Co., 98 N.M. 330, 332, 648 P.2d 788, 790 (1982).

**3.    Existence of a Valid Arbitration Agreement.**

The Supreme Court of the United States has noted that "[a]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)(internal citations omitted).  As the United States Court of Appeals for the Tenth Circuit has noted, "[t]he presumption in favor of arbitration . . . disappears when the parties dispute the existence of a valid arbitration agreement." Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002)("Dumais II").  The New Mexico Court of Appeals has reached a similar conclusion: "[U]nder either the FAA or the [state Act], a legally enforceable contract is a prerequisite to arbitration; without such a contract, parties will not be forced to arbitrate." Heye v. Am. Golf Corp. Inc., 2003-NMCA-138 ¶ 8, 80 P.3d 495, 498 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. at 944-45).  In the Tenth Circuit and in the courts of New Mexico, the "existence of an agreement to arbitrate is a threshold matter which must be established before the [the arbitration statutes] can be invoked." Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997); See K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. at 494, 576 P.2d at 754 (describing whether there is an agreement to arbitrate as a "threshold question").

In determining whether the parties agreed to arbitrate a matter, the court should apply state-law principles regarding the formation of contracts.  See First Options of Chi., Inc. v. Kaplan, 514 U.S. at 944; Avedon Eng'g, Inc. v. Seatex, 126 F.3d at 1287; Piano v. Premier Distrib. Co., 2005-

NMCA-18, ¶ 6, 107 P.3d 11, 14.  It is a fundamental tenet of contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby." Ballard v. Chavez, 117 N.M. 1, 3, 868 P.2d 646, 648 (1994).  Under New Mexico law, "[a] legally enforceable contract requires evidence supporting the existence of 'an offer, an acceptance, consideration, and mutual assent.'" Piano v. Premier Distrib. Co., 2005-NMCA-18, ¶ 6, 107 P.3d at 14. (quoting Heye v. Am. Golf. Corp., 2003-NMCA-139, ¶ 9, 80 P.3d at 498).

Consideration is a promise to do something that a party is under no obligation to do or to forbear from doing something it has a legal right to do.  See Talbott v. Roswell Hosp. Corp., 2005-NMCA-109, ¶ 16, 118 P.3d 194, 198.  A valid contract must be mutually obligatory, i.e. both sides must provide consideration. See Heye v. Am. Golf Corp., 2003-NMCA-138, ¶ 12, 80 P.3d at 499. Thus, a promise must be associated with a corresponding obligation; a promise without an obligation "in reality, promises nothing– it is illusory, and it is not consideration." Id.

In Dumais v. American Golf Corp., 150 F.Supp.2d 1182 (D.N.M. 2001)(Vazquez, J.[2]), the United States District Court for the District of New Mexico was asked to determine if an arbitration provision contained in an employment handbook was enforceable and precluded an employee from bringing a claim for sexual harassment and constructive discharge under Title VII of the Civil Rights Act of 1964 against her employer.  The employer suggested that two documents the employee executed when she became an employee constituted a valid agreement to arbitrate such disputes. The documents included: (i) a form acknowledging that the employee had read and would abide by

---

[2]The Honorable Martha Vazquez is now Chief United States District Judge for the District of New Mexico.

the employer's arbitration program– the "We Can Work It Out" program; and (ii) an acknowledgment form that she would comply with the employment handbook and the "We Can Work It Out" program.

Judge Vazquez, in Dumais v. American Golf Corp., found that the arbitration agreement embodied in the "We Can Work It Out" program to be illusory, because it was executed over two months after the employee began her employment.   The agreement modified the terms of employment– it divested the employee's right to have disputes heard in an Article III court– without consideration in return for that divestiture.  In the particular agreement at issue, Judge Vazquez noted that inconsistent provisions in the employment agreement made it unclear whether the arbitration agreement was binding on the employer, and therefore the potentially unilateral character of the promise to arbitrate made it illusory.

Judge Vazquez limited her holding, however, by acknowledging that, under New Mexico law, an arbitration agreement was not necessarily invalid simply because it contained terms that favored one party over another.  See id. at 1191.  For an agreement to be invalid, the terms of the agreement must be unconscionable.  See id. at 1192.  Judge Vazquez commented that modifications in scheduling and compensation may be economic necessities of doing business, but an alteration in an arbitration agreement required the employee to "surrender[ rights] . . . far more important than those  associated with mere conditions of employment."  Id. at 1193-94.

The Tenth Circuit affirmed Judge Vazquez' holding in a de novo appeal.  See Dumais II.. In so doing, the Tenth Circuit stated: "We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."  Id. at 1219 (citing decisions of the Fourth, Sixth, and Seventh Circuits).

-11-

In Heye v. American Golf Corporation, the New Mexico Court of Appeals considered a question similar to the one that the federal court addressed in Dumais v. American Golf Corp.  The New Mexico Court of Appeals assessed the validity of an arbitration agreement in an employment contract that bound the employee, but not the employer, to arbitrate and that the employee signed after she was hired.  In finding that the agreement was illusory, the New Mexico Court of Appeals noted that the agreement permitted the employer to "amend, supplement, rescind or revise the policy regarding arbitration at its whim."  Id. ¶ 13, 80 P.3d at 499.  Although the employee was bound to arbitrate, the employer "remain[ed] free to selectively abide by its promise to arbitrate" and therefore the employer's "promise to arbitrate [did] not provide the consideration necessary to enforce the arbitration agreement."  Id. ¶ 15, 80 P.3d at 500.

In 2005,  the New Mexico Court of Appeals, in Piano v. Premier Distributing Company, again considered an arbitration agreement that an employer had imposed after employment had commenced.  The plaintiff began employment as an administrative assistant with the defendant on October 21, 1986, and signed an arbitration agreement on January 7, 1999, with the understanding that, if she did not sign the agreement, she would be fired.  The New Mexico Court of Appeals found that the arbitration agreement was illusory because it was unsupported by consideration on the part of the employer.  The Court of Appeals, in Piano v. Premier Distributing Company, rejected the employer's argument that continued at-will employment and the reciprocal promise to arbitrate were sufficient consideration to sustain the agreement.  First, the Court of Appeals reasoned that  "[t]he implied promise of continued at-will employment placed no constraints on [the employer's] future conduct; its decision to continue Plaintiff's at-will employment was entirely discretionary."  Piano v. Premier Distrib. Co., 2005-NMCA-018, ¶ 8, 107 P.3d at 14.  Second, the Court of Appeals

-12-

pointed out that, under the terms of the arbitration agreement itself, the employer had "unilateral authority to modify the Arbitration Agreement . . . [and the agreement] does not require [the employer] to seek [the employee's] approval before altering the terms of the Arbitration Agreement." Id. ¶ 14, 107 P.3d at 16.

Nevertheless, when New Mexico courts have found arbitration agreements to be valid, they have been given broad application  In K.L. House Construction Co. v. City of Albuquerque, the Supreme Court of New Mexico held that a valid arbitration clause existed and that the parties were compelled to arbitrate all disputes when the "subject matter of the dispute has a reasonable relationship to the subject matter of the contract."  91 N.M. at 494, 576 P.2d at 754.

> When a broad and general arbitration clause is used . . . the court should be very reluctant to interpose itself between the parties and the arbitration upon which they have agreed. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate.

Id.  Finally, an arbitration clause does not require consideration independent from the consideration that sustains the contract as a whole.  See Barker v. Golf U.S.A., Inc., 154 F.3d 788, 792 (8th Cir. 1998)("[M]utuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration."); Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 451-52 (2d Cir. 1995).

**4.    Federal Court Action.**

The FAA provides that "[a] party aggrieved by the alleged failure . . . or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in a manner provided for in such agreement."

9 U.S.C. § 4.  Upon a finding that a matter is referable to arbitration, the FAA also indicates that the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."   9 U.S.C. § 3. Notwithstanding the terms of 9 U.S.C. § 3, however, several Circuit Courts of Appeal have concluded that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."  Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,  252 F.3d 707, 709-10 (4th Cir. 2001).  See Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000)("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988).

The Tenth Circuit has cautioned that, when one of the parties petitions the court to stay an action pending compulsory arbitration, the mandatory language of 9 U.S.C. § 3 is binding, and it is error for the court to dismiss the action.  See Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994).  When, however, the party seeking to compel arbitration requests the court for dismissal, and there is no evidence in the record of any party requesting a stay, it is not error for the district court to dismiss the case.  See Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 797 (10th Cir. 1995).

**5.      Equity and Unequal Bargaining Power.**

The FAA and the state arbitration act contemplate that the "written agreement to arbitrate in any contract . . . 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  Volt Info. Sciences, Inc. v. Bd. of Trs., 489

U.S. at 474 (quoting 9 U.S.C. § 2); Murken v. Deutsche Morgan Grenfell, Inc., 2006-NMCA-080, ¶ 30, 139 P.3d 864, 855 (noting the UAA states "that an agreement to arbitrate is 'valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract'").  In considering whether a court should enforce a contract or a provision in a contract, the Supreme Court of New Mexico has suggested that the analysis of the contract should be placed in context, noting that "[t]he business condition under which [a] contract was formed directly affect the parties' relative bargaining power, reasonable expectations, and the commercial reasonableness of risk allocation as provided in the written agreement." Ramirez-Eames v. Hover, 108 N.M. 520, 523, 775 P.2d 722, 725 (1989).  Regardless of the context, however, contracts are presumed enforceable, and "[a]bsent unusual circumstances such as fraud or material misrepresentation, duress, or unconscionability, a valid contract will be enforced, notwithstanding allegations that one party has received the better part of the bargain." Id. at 522, 775 P.2d at 724.  See Drink, Inc. v. Martinez, 89 N.M. 662, 665, 556 P.2d 348, 351 (1976)("The doctrine of unconscionability was intended to prevent oppression and unfair surprise, not to relieve a party of a bad bargain.").

The Supreme Court of New Mexico has adopted the Restatement (Second) of Contracts' definition of "unconscionable," holding that a contract is unconscionable when it is "such as  no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." State ex rel. State Highway & Transp. Dep't v. Garley, 111 N.M. 383, 390, 806 P.2d 32, 39 (1991)(quoting Restatement (Second) of Contracts § 208).  Under New Mexico law, a contract may be procedurally unconscionable or substantively unconscionable. See Guthmann v. La Vida Llena, 103 N.M. 506, 510-11, 709 P.2d 675, 679-80 (1985).

A contract is procedurally unconscionable "only where the inequality is so gross that one

party's choice is effectively non-existent." Id. at 510, 709 P.2d at 679.  See Bowlin's, Inc. v. Ramsey

Oil Co., 99 N.M. 660, 668, 662 P.2d 661, 669 (Ct. App. 1983)(holding that a contract may be

unconscionable if there is "an absence of meaningful choice on the part of one of the

parties")(quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)).

Whether a party has meaningful choice is "determined by examining the circumstances surrounding

the contract formations, including the particular party's ability to understand the terms of the contract

and the relative bargaining power of the parties." Guthmann v. La Vida Llena, 103 N.M. at 510, 709

P.2d 679 (internal citations omitted).  The court should consider several factors, " includ[ing] the

use of sharp practices or high pressure tactics and the relative education, sophistication or wealth or

the parties, as well as the relative scarcity of the subject matter of the contract."  Id.

A contract is substantively unconscionable when the "contract terms [] are illegal, contrary,

to public policy, or grossly unfair."  Id.  As the Supreme Court of New Mexico noted in Guthmann

v. La Vida Llena:

> In determining reasonableness or fairness, the primary concern must be with the
> terms of the contract considered in light of the circumstances existing when the
> contract was made. The test is not simple, nor can it be mechanically applied. The
> terms are to be considered "in the light of the general commercial background and
> the commercial needs of the particular trade or case." Corbin suggests the test as
> being whether the terms are "so extreme as to appear unconscionable according to
> the mores and business practices of the time and place."

Id. at 511, 709 P.2d at 680 (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d at 450).

A holding that a contract is unconscionable requires a finding that one or more of the terms of the

contract was grossly unfair at the time the contract was formed.  Guthmann v. La Vida Llena, 103

N.M. at 511, 709 P.2d at 680.

A contract may also be unenforceable if it is found to be a contract of adhesion.  See State

-16-

ex rel. Udall v. Colonial Penn Ins. Co., 112 N.M. 123, 127, 812 P.2d 777, 781 (1991).  The Supreme

Court of New Mexico has specifically defined a contract of adhesion as a contract having two

features: (i) it must be a standard contract prepared by one party for the acceptance of another; and

(ii) because of a disparity in bargaining power between the parties, the contract must be accepted by

the receiving party without opportunity to negotiate terms and under the condition that acceptance

is required to attain the desired product or service.  See Albuquerque Tire Co., Inc. v. Mountain

States Tel. & Tel. Co., 102 N.M. 445, 448, 697 P.2d 128, 131 (1985).

       The Supreme Court of New Mexico has understood these features as embodying three

elements which must be satisfied before a contract of adhesion may be found.

> First, the agreement must occur in the form of a standardized contract prepared or
> adopted by one party for the acceptance of the other.  Second, the party proffering the
> standardized contract must enjoy a superior bargaining position because the weaker
> party virtually cannot avoid doing business under the particular contract terms.
> Finally, the contract must be offered to the weaker party on a take-it-or-leave-it basis,
> without opportunity for bargaining.

Guthmann v. La Vida Llena, 103 N.M. at 509, 709 P.2d at 678 (internal citations omitted).  A

disparity in the bargaining power of the parties is evidenced by a "showing that the weaker party

virtually could not avoid doing business under the particular . . . contract terms."  Albuquerque Tire

Co., Inc. v. Mountain States Tel. & Tel. Co., 102 N.M. at 448, 697 P.2d at 131 (quoting McCall, Due

Process and Consumer Protection: Concepts and Realities in Procedure and Substance –

Repossession and Adhesion Contract Issues, 26 Hastings L.J. 383, 412-413 (1974)).  This imbalance

may result when the "dominant contracting party has monopolized the relevant geographic or

product market or when all of the competitors of the dominant party use essentially the same contract

terms."  Id.

In New Mexico, contracts of adhesion are not automatically unenforceable; the terms of the contract must still be evaluated to determine if they are unconscionable.  See Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, ¶14, n.3, 668 P.3d 901, 907 n.3 ("Even where a contract is found to be a contract of adhesion, the terms of the contract must be analyzed to determine whether the contract as a whole, or specific provisions of it, are unconscionable.")(quoting Lytle v. CitiFinancial Servs. Inc., 810 A.2d 643, 658 (Pa. 2002)).   The Tenth Circuit shares this understanding.  See Adams v. Merrill Lynch Pierce Fenner & Smith, 888 F.2d 696, 700 (10th Cir. 1989)(remarking that, even if brokerage contracts were contracts of adhesion, no authority sustained the conclusion that arbitration clauses in the contracts were unconscionable).

## ANALYSIS

Thompson admits that arbitration provisions are not contrary to public policy.  Thompson argues, however, that the mere presence of public policy favoring arbitration does not impose a requirement that he submit his claims to arbitration and that, by admitting his wife to Casa Arena, he did not waive his right to present his tort claims to a jury. Thompson has failed to show, however, in what manner the arbitration provision is invalid.   The Court concludes that the arbitration provision is valid and enforceable, and that it would not be unfair or inequitable to require Thompson to arbitrate his claims.

## I.   THE ARBITRATION CLAUSE IN THE ADMISSION CONTRACT CREATED A VALID AGREEMENT BETWEEN THE PARTIES  TO ARBITRATE THEIR DISPUTES.

Unlike some of the employment cases on which Thompson relies, the arbitration provision at issue is not a separate contract from the Admission Contract.  As such, the agreement to arbitrate is one provision in a more extensive contract supported by valid consideration from both parties.

Moreover, given the circumstances surrounding the agreement, the Admissions Contract is not illusory.

**A.   THERE IS SUFFICIENT CONSIDERATION FOR THE ARBITRATION PROVISION.**

Thompson correctly argues that the issue presented is whether the parties created a valid agreement to submit claims to arbitration.  Thompson incorrectly argues, however, that, under the circumstances that this case presents, the agreement to arbitrate is illusory and therefore the Court should not compel him to forego his right to a jury trial.  The question is whether both Thompson and Casa Arena provided consideration for the agreement to arbitrate any and all disputes that might arise.

Thompson contends that the agreement to arbitrate is illusory, because there was no mutuality of obligation and the choice of performance was left to Casa Arena.  Thompson's lack of consideration argument fails, however, because the arbitration provision is not a separate contract from the underlying contract.  Both parties provided consideration for the agreement to arbitrate any and all disputes that might arise.

The arbitration provision is not a separate contract requiring separate consideration from the underlying contract.  Here, the agreement to arbitrate is one provision in a more extensive contract supported by valid consideration from both parties.  Both parties enjoy the benefits and are bound by the obligations of the contract, including the obligation to submit their disputes to arbitration.  The arbitration provision is a part of the underlying contract, and no additional consideration is necessary for enforcement of the provision.

**B.     THE CONTRACT IS NOT ILLUSORY.**

Thompson attempts to support his argument by analogizing his case to several New Mexico cases, including Dumais v. American Golf Corp., Heye v. American Golf Corp., and  Piano v. Premier Distributing Co.  Thompson suggests that these cases stand for the proposition that an arbitration agreement made in consideration for continued at-will employment is illusory because the employer can terminate the employee at any time.  Thompson likens his case to the cited employment cases, contending that, given Casa Arena's unilateral authority to transfer or discharge Thompson's wife and terminate the Contract in the event it exercised such authority, the Admission Contract is an "at-will" agreement.  The Court disagrees with Thompson's analysis.

The facts of this case are distinguishable from each of the cases in which the New Mexico courts have found that contracts containing arbitration clauses are illusory.  Unlike the employment contract cases, the arbitration agreement between Thompson and Casa Arena was executed contemporaneous with the execution of the overall contract that defines the parties' relationship.  Thompson signed the Admission Contract that contains the arbitration provision at the time Bennett was admitted to Casa Arena for services.  As the arbitration provision was incorporated into the Admission Contract, the subsequent imposition of the agreement to arbitrate found in the employment cases is not present in this case.  This case is not one in which Casa Arena subsequently modified the contract, or divested Thompson of a contractual right, without new or additional consideration.

Nor is there any provision in the Admission Contract granting Casa Arena the right to unilaterally alter or modify any of the contractual provisions, including the arbitration clause.  Although Thompson argues that Casa Arena could have terminated Bennett's residency at any time,

Thompson has produced no evidence that Casa Arena could have altered or modified the arbitration agreement, or any other contractual provision, at its discretion. To the contrary, the Admission Contract itself provides that the contract may only be amended in a writing executed by both parties. See Admission Contract, Art. V ¶ 5.

At most, the Admission Contract establishes an at-will relationship. New Mexico courts have not, however, stated that the presence of this feature alone is enough to make a contract illusory overall. The New Mexico Court of Appeals has ruled only that the continuation of an existing at-will employment relationship is not sufficient consideration to support an arbitration agreement that is added as an addendum after the commencement of the employment relationship. See Piano v. Premier Distrib. Co., 2005-NMCA-018, ¶¶ 8-9, 107 P.3d at 14-15. In reaching this conclusion, the New Mexico Court of Appeals, in Piano v. Premier Distributing Company, cited the South Carolina Court of Appeals' decision in Poole v. Incentives Unlimited, Inc., 525 S.E.2d 898 (S.C. Ct. App. 1999). In holding that a covenant not to compete entered into several years after employment had commenced required new or additional consideration to be valid, the South Carolina Court of Appeals noted in Poole v. Incentives Unlimited, Inc. that "ordinarily employment is a sufficient consideration to support a restrictive negative covenant, but where the employment contract is supported by purported consideration of continued employment, . . . [it] was without consideration where contract was exacted after several years employment and employee's duties and position were left unchanged." Id. at 900. The arbitration agreement into which Thompson entered was not an addendum or entered into subsequent to the formation of the Admission Contract. Consequently, the continuation of a pre-existing relationship is not the consideration upon which the arbitration agreement rests and the Admission Contract is not rendered illusory because some aspects of the

contract may potentially be construed as having at-will characteristics.

Thompson admits that he entered into the Admissions Contract with Casa Arena. Parties to an agreement are presumed to know and understand the terms of the agreement. The Admissions Contract incorporates an arbitration agreement that requires any and all claims by either of the parties to be submitted to binding arbitration. The arbitration provision is titled in bold, capital letters, set apart from other text, and is located directly above the signature line. The arbitration agreement applies equally to both parties. Arbitration is required in this matter.

## II.    THE ARBITRATION CLAUSE IS ENFORCEABLE UNDER THEORIES OF LAW AND EQUITY.

Thompson does not dispute that the inclusion of an arbitration provision in an agreement is legal and that enforcement of such a provision is not contrary to public policy. Thompson disputes, however, whether the arbitration provision contained in the Admission Contract was, as applied to him, fair, and seeks relief pursuant to the FAA and the UAA, both of which state an arbitration provision is valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. Specifically, Thompson argues that the Admission Contract was unconscionable, because there was unequal bargaining power between the parties and because the Admission Contract is a contract of adhesion. Thompson has failed, however, to show that the Admission Contract is a contract of adhesion. The arbitration provision is not unconscionable, and the Court will enforce it.

Thompson argues that the Admission Contract is an adhesion contract and that the Court should not enforce it. Thompson alleges that the Admission Contract was a standardized contract that Casa Arena prepared for Thompson's acceptance, that Casa Arena enjoyed a superior bargaining

-22-

position because Thompson could no longer care for his wife, that Casa Arena was the only long-term care facility available to care for his wife, and that Thompson was not afforded an opportunity to negotiate changes to the Admission Contract.   The Admission Contract appears to be a standardized contract and thus satisfies the first element of an adhesion contract.  Thompson has not, however, demonstrated that the remaining two elements for an adhesion contract are satisfied.

To address the second element – whether Casa Arena had a superior bargaining position – Thompson states that he could no longer care for his wife and Casa Arena was the only long-term care facility with the capability to care for his wife.  A party has superior bargaining position when "the weaker party virtually cannot avoid doing business under the particular contract terms." Guthman v. La Vida Llena, 103 N.M. at 509, 709 P.2d at 678.  Thompson admits, however, that other suitable long-term care facilities were available in Las Cruces.  Thompson represents that the distance between his home in Alamogordo and Las Cruces is sixty miles.  See Transcript of Hearing at 25:16-18 (taken March 23, 2006)("Transcript").  Staying in Alamogordo rather than going to Las Cruces was therefore a choice, not an absolute necessity.

With respect to the third and final element – lack  of opportunity to bargain – Thompson has not made a showing that Casa Arena did not afford him an opportunity to negotiate, or that he attempted to negotiate and was rebuffed.  Thompson merely states: "I did not negotiate any of the terms of the Admission Contract nor did I discuss those terms with any of the individuals at Casa Arena."  Thompson Affidavit ¶ 13, at 3.  Based on the facts stated in Thompson's affidavit, the Court concludes that the Admission Contract is not a contract of adhesion.

Regardless of whether the Admission Contract is a contract of adhesion, the Court must also determine whether it is unconscionable.  See Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-

011, ¶ 14 n.3, 668 P.3d at 907 n.3.  The Court has reviewed the Admission Contract, as well as Thompson's Response and affidavit for the circumstances surrounding the formation of the Admission Contract, and concludes that the Admission Contract is not procedurally or substantively unconscionable.  See Guthmann v. La Vida Llena, 103 N.M. at 510-11, 709 P.2d at 679-80.

A contract is procedurally unconscionable when one of the parties lacks a meaningful choice in executing the contract.  To evaluate Thompson's degree of choice, the Court has considered the circumstances surrounding the formation of the contract, including tactics that Casa Arena employed to induce Thompson to execute the contract, and the relative education and sophistication of the parties.

While it was Thompson's understanding that his wife would not be admitted to Casa Arena unless and until he signed the Admission Contract, he does not allege that Casa Arena used high-pressure tactics to obtain his signature.  Thompson's attorney characterized Thompson as "a fairly educated man,"  see Transcript at 26:9, and Thompson concedes that he reviewed the Admission Contract.  See Response at 15.  Thompson alleges in his Response, although not in his Affidavit, that "he may not have 'understood' the ramification of each provision as an explanation was not provided by Casa Arena,"  see id. at 16 (emphasis added), but nothing else in Thompson's Response or Affidavit suggests that he had limited ability to understand the terms of the Admission Contract in general or the language of the arbitration agreement specifically.

Thompson concluded that Casa Arena was the only facility available in Alamogordo that was capable of caring for his wife, but admits that there were other long-term care facilities available in Las Cruces.  The fact that he "hated to have [his wife] institutionalized so far from home [in Las Cruces]" does not demonstrate that Casa Arena's relative bargaining power was so great as to render

-24-

the Admission Contract procedurally unconscionable.  See Albuquerque Tire Co. v. Mountain States Tel. & Tel. Co., 102 N.M. at 448, 697 P.2d at 131 (stating that the test for disparity in bargaining power can be satisfied by showing that weaker party could not avoid doing business under the particular contract terms, such as would be the case when the dominant party has monopolized the relevant geographic market).  Thompson's home in Alamogordo is approximately sixty miles from Las Cruces.  See Transcript at 25:16-18.  While the Court sympathizes with the inconvenience traveling this distance may have caused Thompson, this distance is not so great that it effectively precluded Thompson from having other meaningful choices besides Casa Arena.

The Court also reviewed the terms of the Admission Contract in light of the circumstances existing when the Admission Contract was made and concludes that the Admission Contract is not substantively unconscionable.  See Guthmann v. La Vida Llena, 103 N.M. at 510, 709 P.2d at 679 (stating that substantive unconscionability is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair).  Thompson does not dispute that the FAA and UAA portend a policy favoring arbitration agreements.  See Response at 2.  Rather, Thompson argues that the arbitration provision is unfair, because it requires Thompson to arbitrate all claims he might bring against Casa Arena while the only claims that Casa Arena would be required to arbitrate would be claims for debt and money due if Thompson failed to pay.  See id. at 17.

The Court disagrees with Thompson's reading of the arbitration clause.  Like Thompson, the arbitration provision requires Casa Arena to arbitrate all claims which it may have.  The arbitration provision states that any action arising between the parties and arising out of "any past, present or future incidents, omissions, acts, errors, practices, or occurrences causing injury to either party" shall be resolved by binding arbitration.  Admission Contract, Art. VI.  That Casa Arena may have fewer

-25-

possible claims that it could bring, does mean that it may have fewer claims than Thompson. The arbitration provision divests Casa Arena of its right to have its claims decided in a court in the same manner as it divests Thompson, and is therefore not grossly unfair.

Finally, Thompson states that the arbitration provision was "hidden at the end of the Admission Contract." Response at 2. Thompson's characterization of the arbitration provision is inaccurate. The arbitration provision is plainly visible directly above the signature lines, is labeled "**ARBITRATION**" in bold, capital letters, and is in the same font and type size as the other provision titles in the Admission Contract. Thompson, as a party to the Admission Contract, had a duty to read and familiarize himself with the contents of the Contract.

Not only is the arbitration agreement fair, it is clear and unambiguous. Moreover, it is in accordance with public policy in the federal system and New Mexico. Congress, the New Mexico Legislature, and federal and New Mexico courts have expressed a strong public policy favoring arbitration. This policy, embodied in 9 U.S.C. § 2, requires that the Court compel the parties to adhere to the existing Arbitration agreement. All of Thompson's claims are subject to the arbitration provision in the Admission Contract that he signed.

The Arbitration Agreement that Thompson signed applies to the matters and issues addressed and raised in Thompson's Complaint and Amended Complaint. Under the FAA, enforcement of the Arbitration Agreement is required. In addition, the UAA and New Mexico case law require adherence to the arbitration agreement that Thompson signed. Given the FAA's and the UAA's authority, federal and New Mexico case law, and the public policy in favor of arbitration, the Court has a duty to order adherence to the Arbitration Agreement.

-26-

III.    <u>**THE COURT WILL DISMISS THE CASE.**</u>

The arbitration provision in the Admission Contract that Thompson signed applies to the matters and issues that Thompson addresses and raises in his Amended Complaint.  The FAA requires enforcement of the arbitration provision.  In addition, the UAA and New Mexico case law require adherence to the arbitration provision in the Admission Contract that Thompson signed.  Thompson failed to bring forward specific facts showing a genuine issue for trial whether the Admission Agreement is invalid or unconscionable.

Casa Arena requests that the Court dismiss Thompson's Complaint and Amended Complaint rather than stay the case pending arbitration.  Thompson did not request that the Court stay the case either in his Response or at the March 23, 2006 hearing.  At the hearing, Thompson's counsel stated that they "may" ask for a stay.  <u>See</u> Transcript at 37:6-7.  The Court then asked whether there is any benefit to the Court keeping the case open. Thompson's counsel could not think of any benefit.  <u>See</u> <u>id.</u> at 37:18-20.  To date, Thompson has not asked for a stay.  Nor has he argued that some claims are arbitrable and others are not.

If a party seeking to compel arbitration requests a dismissal rather than a stay, and the party resisting arbitration fails to request a stay, the court may dismiss the case.  <u>See</u> <u>Armijo v. Prudential Ins. Co.</u>, 72 F.3d 793, 797 (10th Cir. 1995).  There is no remedy that this Court may grant Thompson.  Dismissal of the Amended Complaint is proper.

**IT IS ORDERED** that the Motion to Dismiss and Compel Adherence to the Arbitration Agreement is granted and the parties are ordered to follow the arbitration agreement's provisions as expressed in the Admission Contract.  The Amended Complaint is dismissed.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Thomas A. Sandenaw, Jr.
CaraLyn Banks
Sandenaw, Piazza, & Anderson, P.C.
Las Cruces, New Mexico

     _Attorneys for the Plaintiff_

Terry Guebert
RaMona G. Bootes
Christopher J. DeLara
Guebert, Bruckner & Bootes, P.C.
Albuquerque, New Mexico

     _Attorneys for the Defendant_