# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

T. DAVID THOMPSON, Individually and
as the Personal Representative of the Estate
of CAROLYN ROSE BENNETT,

        Plaintiff,

vs.                                                                          No. CIV 05-1331 JB/LCS

THI OF NEW MEXICO at CASA ARENA d/b/a
CASA ARENA BLANCO NURSING HOME,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Rule 60(b) Relief,

Motion to Compel Arbitration, or Alternatively Motion for Leave to File Complaint for Wrongful

Death, filed March 20, 2008 (Doc. 18)("Rule 60(b) Motion"). The Court held a hearing on May 14,

2008. The Court previously dismissed this case, ordering the parties to arbitrate their claims.

Plaintiff T. David Thompson now seeks to reopen the case to resolve a dispute over the proper

parties to the arbitration. The primary issues are: (i) whether Thompson's request for relief must

be categorized as seeking relief from a mistake under rule 60(b)(1) and is thus time-barred; (ii)

whether this case presents extraordinary circumstances warranting relief under rule 60(b)(6); and

(iii) whether the Court should grant Thompson leave to amend his original complaint against

Defendant THI of New Mexico at Casa Arena d/b/a Casa Arena Blanco Nursing Home and add THI

of Baltimore as a Defendant. Because the basis of some of Thompson's requested relief is grounded

in litigation mistakes, Thompson's motion seeks relief in part under rule 60(b)(1) and is untimely.

While the remainder of Thompson's requested rule 60(b) relief relies on post-litigation conduct and

may thus be brought under rule 60(b)(6), there are no sufficiently compelling circumstances to justify granting such relief. The Court will therefore not reopen this case. Finally, because Thompson's alternative request for leave to amend requires the reopening of the case, the Court will deny that alternative request for substantially the same reasons it denies Thompson's rule 60(b) request. Accordingly, the Court will deny the Rule 60(b) Motion.

## FACTUAL BACKGROUND

This case arises as a result of the death of Carolyn Rose Bennett, a patient at the Casa Arena nursing home. Thompson, her husband, placed Bennett in Casa Arena's care because she had developed early dementia. See Amended Complaint for Wrongful Death, Per Se Negligence for Violation of Federal and State Laws Governing Nursing Facilities, Breach of Fiduciary Duty, Negligence and Breach of Contract ¶ 9, at 3, filed January 9, 2006 (Doc. 2)("Amended Complaint"). Bennett allegedly died after she fell and sustained a hip fracture during a grand mal seizure on the morning of January 17, 2005, see id. ¶ 30, at 6, about a week after her routine Ativan doses had been halted, see id. ¶ 27, at 5. Thompson, contending that Casa Arena was responsible for Bennett's demise, brought a wrongful-death action. The present motion, however, turns not on the circumstances of Bennett's unfortunate death, but on the contract Thompson signed, and on the relationship between Casa Arena and THI of Baltimore.

1.     **The Execution of the Admission Contract.**

In placing Bennett under Casa Arena's care, Thompson was required to sign an Admission Contract. See Exhibit F to Rule 60(b) Motion, Admission Contract (dated February 9, 2004)(Doc. 18-3). The Admission Contract had three parties: (i) "Casa Arena Blanca, a corporation . . . ('the Health Care Center')"; (ii) "Carolyn Bennett ('Patient/Resident')"; and (iii) "David Thompson ('Fiduciary Party')." Id. at 1. The names Casa Arena Blanca, Carolyn Bennett, and David

Thompson were handwritten in blanks on the contract, and the remaining language following the names was typed.  Thompson, as Fiduciary Party, and Dayna Grammar, as "Health Care Center Representative," signed the Admission Contract.  Id. at 6.

The Admission Contract contained a number of clauses, including, as relevant here, a broadly worded arbitration clause that provided:

> Pursuant to the Federal Arbitration Act, any action, dispute, claim or controversy of any kind (e.g., whether a contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereinafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of healthcare services, any agreement between the parties, the provision of any other goods or services by the Health Care Center or other transactions, contracts or agreements of any kind whatsoever, any past, present or future incidents, omissions, acts, errors, practices, or occurrences causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").

Admission Contract at 5.  The Admission Contract also had an addendum that dealt with insurance and payment issues.  See Exhibit F to Rule 60(b) Motion, Admission Contract Addendum (dated February 9, 2004)(Doc. 18-3)("Addendum").  In the Addendum, Casa Arena is identified as a "Trans Health corporation (hereinafter the 'Health Care Center')."  Id. at 1. Trans Health is handwritten in a blank space and the language following that name is typed.

THI of Baltimore provided Casa Arena with the admissions contracts that it used.  See Exhibit G to Rule 60(b) Motion, Deposition of T.J. Hicks at 50:4-9 (taken November 15, 2007)(Doc. 18-3)("Hicks Depo.").  T.J. Hicks, Casa Arena's administrator at the time, kept a book of contracts in his office, but only looked at the contracts if "told to pull a contract and send it to somebody." Id. at 59:14-15.  From the context, Hicks might be talking about pharmacy services agreements, and not necessarily about admissions contracts.

2.      **The Relationship Between Casa Arena and THI of Baltimore**.

According to Hicks' deposition testimony, THI of Baltimore exercised a substantial degree of control over its subsidiary, Casa Arena.   THI of Baltimore recruited Hicks, and THI of Baltimore's regional director Jaime Andujo hired him.  See id. at 24:1-25:4.  Although Hicks could not remember what the name on his paycheck was, he considered Andujo to be his boss.  See id. at 44:12-21.  Hicks was, however, responsible for the overall operations of Casa Arena.  See id. at 31:12-24.

THI of Baltimore officials conducted meetings in New Mexico with staff at Casa Arena and other facilities.  The meetings included discussions of reporting requirements for incidents at nursing homes under Department of Health regulations, and about the setting of financial and clinical goals.  See id. at 34:18-36:20.  THI of Baltimore provided policy and procedures manuals to Casa Arena, although Hicks was unaware of who developed them.  See id. at 37:4-18.  THI of Baltimore also established incentives for Casa Arena's Director of Nursing and its administrator.  See id. at 39:5-19.

THI of Baltimore prepared the annual budget and long-term strategic plan for Casa Arena.  See id. at 47:13-25, 48:18-24.  Casa Arena provided detailed financial and clinical reports to THI of Baltimore on a monthly basis.  See id. at 41:11-42:8.  While Casa Arena's finance department handled some of the business functions, Casa Arena's department also relied on THI of Baltimore's assistance.  See id. at 44:22-45:15.  Hicks was unaware whether THI of Baltimore was providing revenue subsidization for Casa Arena.  Hicks believed it had never been needed, but if it happened, it would have been a "corporate kind of thing" that he would not have been involved in.  Id. at 46:21.

Like the other nursing homes that THI of Baltimore owns and operates, Casa Arena is insured through a single insurance policy that THI of Baltimore purchased.  See Exhibit H to Rule 60(b) Motion, Schedule of Locations Endorsement at 2 (effective August 30, 2004)(Doc. 18-3).

Casa Arena's mailing address, principal address outside of New Mexico, registered agent, and organizers are identical to those of THI of Baltimore and THI of New Mexico. <u>See</u> Exhibit I to Rule 60(b) Motion, New Mexico Public Regulatory Commission Corporation Information for Casa Arena, THI of New Mexico, and THI of Baltimore (dated March 17, 2008)("Corporate Registration").

## PROCEDURAL BACKGROUND

Thompson originally filed a wrongful-death action against Casa Arena on December 21, 2005, alleging that Casa Arena's negligence and contractual breaches caused the death of his wife, Bennett. <u>See</u> Complaint for Wrongful Death, Per Se Negligence for Violation of Federal and State Laws Governing Nursing Facilities, Breach of Fiduciary Duty, Negligence and Breach of Contract ¶¶ 38-75, at 8-18, filed December 21, 2005 (Doc. 1). Thompson filed an Amended Complaint shortly thereafter, which did not make any significant substantive changes. When Thompson filed his first two Complaints against Casa Arena, he was unaware that THI of Baltimore might employ at least some staff at Casa Arena and that THI of Baltimore's exercise of control over Casa Arena might make THI of Baltimore the alter ego of its subsidiary. In his Amended Complaint, Thompson's allegations against Casa Arena were based on its role as the employer of the "employees, administrator[s], agents, servants, representatives, officers, directors, designees, nurses, nurses' aides, pharmacists and/or contractors who were acting within the course and scope of their employment." Amended Complaint ¶ 6, at 2.

The Court dismissed Thompson's case, ordering the parties to submit their dispute to arbitration. At the time, there was an outstanding motion to add THI of Baltimore to the case, which the Court did not address. Thompson did not move the Court to reconsider its ruling in light of the outstanding motion, but chose to proceed with arbitration. Several months into the arbitration, a

dispute arose whether THI of Baltimore was a party to the arbitration by virtue of the Court's order. The arbitrator determined that he did not possess the authority to decide this particular issue and stayed the case pending resolution in federal court.  Thompson then brought the present motion seeking to reopen the case.

1.   **Earlier Proceedings Before the Court.**

On January 17, 2006, after Thompson filed his Amended Complaint, Casa Arena moved the Court to dismiss the Amended Complaint and compel arbitration in accordance with the Admission Contract.  See  Motion to Dismiss and Compel Adherence to the Arbitration Agreement at 2, filed January 17, 2008 (Doc. 3)("Motion to Compel Arbitration").  The parties completed briefing on the Motion to Compel Arbitration on March 10, 2006.  See Notice of Completion of Briefing, filed March 10, 2006 (Doc. 9).  It was not until after the completion of the briefing that Thompson learned about THI of Baltimore.  On March 23, 2006, the Court held a hearing on the Motion to Compel Arbitration.  The Court indicated at the hearing that it was inclined to grant the motion, but wanted to take a closer look at the case law.  See Transcript of Hearing at 38:4-7 (taken March 23, 2006)(Court).[1]  It was not until after the briefing was complete and the hearing was over that several potentially important events occurred.

First, between the time the briefing was completed and the date the Court granted the Motion to Compel Arbitration, the AHLA rules were modified.  The AHLA released a notification that, "[e]ffective June 2006, the [AHLA] will administer a 'consumer health care liability claim' . . . only if (1) all of the parties have agreed in writing to arbitrate the claim after the injury occurred . . . or (2) a judge orders that the [AHLA] administer an arbitration under the terms of a pre-injury

---

[1] The Court's citations to the transcripts of any hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain different page and/or line numbers.

agreement." Exhibit E to Rule 60(b) Motion, Important Rules Amendments (Doc. 18-2).  See Exhibit E to Rule 60(b) Motion, AHLA Rules of Procedure for Arbitration art. 1.01 (Doc. 18-2)("AHLA Rules").  Because of the timing of this amendment, the issue was not addressed in the briefing or during oral argument at the hearing.

Second, also subsequent to the briefing and hearing, Thompson "learned that Casa Arena was under the direct control of its parent corporation, THI of Baltimore, LLC and determined that complete relief could not be available to him if the parent corporation and other New Mexico subsidiary corporations were not added as parties to the Complaint."  Rule 60(b) Motion ¶ 3, at 2. Thompson then moved the Court for leave to amend its Amended Complaint to add THI of Baltimore and Sunscript Pharmacy Corporation, the apparent employer of a pharmacy consultant working with Casa Arena, as parties.  See Request for Leave to File Second Amended Complaint to Add Indispensable Parties ¶ 17, at 6, filed August 2, 2006 (Doc. 13)("Motion to Amend").

Casa Arena opposed the Motion to Amend.  Casa Arena argued that, because the Court had indicated its inclination to enforce the arbitration clause of the Admission Contract, amendment was improper.  See Response to Motion for Leave to File Second Amended Complaint to Add Indispensable Parties at 2, 4, filed August 17, 2006 (Doc. 14).  When it enforced arbitration, Casa Arena maintained, the Court would be divested of jurisdiction, rendering amendment of the Complaint improper in light of the Court's earlier inclination.  See id.  Casa Arena contested this position, arguing that, if the Court granted the Motion to Compel Arbitration, then it would still have a federal case against Sunscript to pursue, while proceeding in arbitration against "the other defendants."  Reply to Defendant's Response to Plaintiff's Request for Leave to File Second Amended Complaint to Add Indispensable Parties at 2, filed August 28, 2006 (Doc. 15).

Approximately two weeks after Thompson's reply, the Court entered a memorandum opinion

and order granting the Motion to Compel Arbitration and entered a Final Judgment that same day. See Thompson v. THI of New Mexico at Casa Arena Blanca, LLC, 2006 WL 4061187, Memorandum Opinion and Order, entered September 12, 2006 (Doc. 16)(D.N.M.)(Browning, J.)("Memo."); Final Judgment, entered September 12, 2006 (Doc. 17).  In its opinion, the Court noted that Casa Arena sought dismissal of the case, while Thompson had not requested a stay pending arbitration.  See Memo. at 27.  Accordingly, the Court ordered arbitration and dismissed the case.  See id.  The Court did not address the pending Motion to Amend, which was terminated when judgment was entered.  Nothing else was filed with the Court regarding this case until approximately eighteen months later, when Thompson filed his Rule 60(b) Motion.

2.    **Thompson's Arbitration Against Casa Arena and Others.**

In the meantime, Thompson sought to arbitrate his claims in compliance with the Court's order.  According to Thompson, on January 24, 2007, he filed a request for arbitration with the AHLA against Casa Arena, THI of Baltimore, and "all successor corporations who purchased and/or otherwise obtained the assets of Casa Arena."  Rule 60(b) Motion ¶ 5, at 2; Exhibit A to id., Letter from CaraLynn Banks to AHLA at 1 (dated January 24, 2007)(Doc. 18-2)("Request for Arbitration").  Thompson's allegations against THI of Baltimore included:

> The undisputed evidence established that Casa Arena and the for-profit nursing home corporation that managed and controlled Casa Arena [THI of Baltimore] and other nursing home subsidiaries, including others in New Mexico, failed to have any system in place to prevent or correct such errors and that such failure resulted in harm to vulnerable residents treated at its facility, like Carolyn Rose Bennett. Moreover, the failure of Casa Arena, [THI of Baltimore], or its successor corporation to make changes and ensures that these processes were implemented after Carolyn Rose Bennett's death establishes that Casa Arena and [THI of Baltimore] utterly disregarded the health and safety of residents at Casa Arena, like Carolyn Rose Bennett.  Casa Arena, THI of Baltimore and its shareholders who managed and control THI of Baltimore and its subsidiaries, and the successor corporation of THI of Baltimore should be held responsible for Carolyn's untimely death and should be punished for their failure to implement basic processes at Casa Arena to protect

-8-

vulnerable individuals who live in 98 nursing homes owned, managed, and controlled by the directors of THI of Baltimore and its successor corporation[.] . . . and . . . most important, [THI of Baltimore] provides oversight functions for Casa Arena, including the development of policies and procedures and corporate compliance guidelines.  In this instance, the gross misconduct at the corporate level which resulted in Carolyn's death occurred at the highest level within [THI of Baltimore].

Request for Arbitration at 6.  This letter was sent to the AHLA, but was never directly sent to THI of Baltimore or Casa Arena.[2]

Approximately two months after Thompson sent his Request for Arbitration to the AHLA, RaMona G. Bootes, Casa Arena's counsel, sent a Request for Dispute Resolver List to the AHLA.  See Exhibit B to Response, Request for Dispute Resolver List (dated March 23, 2007).  According to the AHLA's website: "To initiate either an arbitration or mediation, the parties to the dispute fill out the Request for a Dispute Resolution List," to which the AHLA will respond by sending the parties a list of prospective arbitrators.  See Exhibit A to Response, AHLA, "Alternative Dispute Resolution," available at http://publish.healthlawyers.org/Resources/ADR/Pages/default.aspx (last visited December 24, 2008).[3]  The Request for Dispute Resolver List was initially filled out by Ms. Banks, who signed and dated the form on January 24, 2007 -- the same day that she sent the AHLA the Request for Arbitration.  See Request for Dispute Resolver List at 6.  Ms. Bootes then made some additions, and signed and dated the Request for Dispute Resolver List the day that she sent the

_____

[2] AHLA is the sole addressee of the Request for Arbitration.  There is no evidence that the Request for Arbitration was sent either to Casa Arena or THI of Baltimore.  Casa Arena's counsel represents that she did not learn of the Request for Arbitration until January 2008, see Defendant's Response to Plaintiff's Motion for Rule 60(b) Relief at 5, filed April 7, 2008 (Doc. 19)("Response"), a statement that Thompson has not disputed.

[3] The URL address appearing on the exhibit submitted with the Response is now defunct, but the address listed leads to the current web page containing the same information as in the exhibit. The old address was www.healthlawyers.org/Template.cfm?Section=About_Arbitration_ and_Mediation_Services.

list to the AHLA -- March 23, 2007.  See id.  On the form, "Casa Arena Blanca Nursing Ctr." is named as a party requesting a list, while "THI of New Mexico, LLC d/b/a Casa Arena Blanca Nursing Ctr." is named as a party not requesting a list.  Id. at 3.  Other than Thompson, no others parties are listed.  In response to the question, "Are there any other individuals, groups or institutions not directly involved in the dispute, that are materially affected by the resolution of this dispute?", only "Omnicare Pharmacy of New Mexico" is identified.  Id. at 4.  The Request for Dispute Resolver List also notes that "Plaintiff assumes that THI will assume the costs of litigation."  Id. at 6.  Ms. Bootes added a footnote to this line stating: "THI of New Mexico, LLC d/b/a Casa Arena Blanca Nursing Center will agree to bear its share of the cost for arbitration but will not agree to assume the entire cost."  Id.

Arbitration proceedings commenced and discovery ensued.  Thompson sought through discovery to discern the relationship between THI of Baltimore, Casa Arena, and various associated and subsidiary entities.  See Plaintiff's Memorandum in Support of This Motion for Rule 60(b)(6) Relief, Motion to Compel Arbitration, or Alternatively Motion for Leave to File Complaint for Wrongful Death at 3, filed March 20, 2008 (Doc. 18)("Memo. in Support").  Thompson's request met with objections, and at a hearing on a motion to compel held January 3, 2008, the arbitrator "questioned whether THI of Baltimore was a proper party to the arbitration and whether he had authority to issue a decision on that question."  Id.

On January 16, 2008, Thompson requested THI of Baltimore's consent to the arbitrator's jurisdiction.  See Exhibit B to Rule 60(b) Motion, Facsimile Letter from CaraLynn Banks to Mr. Tim L. Fields, Esq. at 2 (dated January 16, 2008)(Doc. 18-2).  Mr. Fields responded two weeks later, and stated that THI of Baltimore did not consent to being a named party in the arbitration and did not believe that the arbitrator had authority to decide jurisdictional issues regarding THI of

Baltimore.  See Exhibit C to Rule 60(b) Motion, Facsimile Letter from Tim L. Fields to CaraLynn

Banks at 1-2 (dated January 29, 2008)(Doc. 18-2).  The next month, the arbitrator issued an order

stating that he lacked "the authority to consider whether to compel THI of Baltimore to participate

in this arbitration."  Exhibit D to Rule 60(b) Motion at 1 (dated February 26, 2008)(Doc. 18-

2)("Arbitrator's Order").  The Arbitrator's Order also stayed the arbitration "until such time as a

Court determines whether THI of Baltimore is required to participate as a party to arbitration or a

Federal Court determines that the arbitrator has authority to consider whether to make such a

decision."  Id.  On March 20, 2008, Thompson filed the present motion with the Court.

### 3.      **Thompson's Rule 60(b) Motion.**

Thompson requests two forms of relief in his Rule 60(b) Motion: (i) that the Court compel

THI of Baltimore and its subsidiaries to participate in the pending arbitration; or (ii) that,

alternatively, the Court allow Thompson to file an amended complaint against THI of Baltimore.

See Rule 60(b) Motion at 3.  Thompson brings his motion pursuant to rule 60(b)(6), noting that he

is precluded from proceeding under rule 60(b)(1) because the motion would not be timely.  See

Memo. in Support at 4 & n. 1.  Thompson asserts that this case presents exceptional circumstances

warranting relief because, without THI of Baltimore being a party to the arbitration or the Court

allowing a new complaint against THI of Baltimore, Thompson's claims would be foreclosed.  See

id. at 4-5.

Thompson's first argument that failure to grant his motion would lead to inequity is that the

AHLA changed its arbitration rules after the completion of briefing on the Motion to Compel

Arbitration.  Under the new rules, either a post-incident agreement or a judicial order enforcing a

preexisting agreement is required before the AHLA will hear an arbitration claim.  See id. at 5

(citing AHLA Rules art. 1.01).[4]  Thompson argues that he was unaware that THI of Baltimore likely exercised such control over Casa Arena to be an alter-ego of Casa Arena and did not learn about THI of Baltimore's degree of control over Casa Arena until after briefing on the Motion to Compel Arbitration was finished.  As a result, Thompson contends, the Court never had the opportunity to consider whether THI of Baltimore was an indispensable party to the litigation.  See Memo. in Support at 5-6.  Thompson maintains that this issue will lead to inequity because another AHLA rule states that

> any decision made by the arbitrator "extinguishes any rights pertaining to the subject matter of the arbitration against any other entity controlled by, **in control of**, or under common control with the party unless the party having the claim against such affiliates gives timely notice to such affiliates inviting the affiliate to participate in the arbitration."

Memo. in Support at 6 (quoting AHLA Rules art. 6.06)(emphasis added by Memo. in Support). According to Thompson, the conjunction of articles 1.01 and 6.06 of the AHLA Rules will operate to deprive Thompson of any rights against THI of Baltimore unless the Court requires THI of Baltimore to participate in the arbitration.  See Memo. in Support at 6.

Thompson then turns to arguing why the Court should order THI of Baltimore to participate in the arbitration.  Thompson first argues that including THI of Baltimore in the arbitration is appropriate because THI of Baltimore employees "likely executed the Admission Contract."  Memo. in Support  at 6.  Thompson maintains that Casa Arena's administrator at the relevant times was Hicks, whom THI of Baltimore recruited and hired, and who considered the regional director of THI of Baltimore to be his supervisor.  See id. at 7 (citing Hicks Depo. at 23:12-25:4, 44:17-21). Thompson also maintains that THI of Baltimore drafted the Admission Contract and provided it to

---

[4] In briefing, Thompson misquoted the rule as reading in the conjunctive, that is, as requiring both an agreement and a judicial order.

Casa Arena, and that Dayna Grammar, whom Thompson asserts is a THI of Baltimore employee, signed the Admission Contract.  See Memo. in Support at 7.  In light of these facts, Thompson contends that, "THI of Baltimore could be considered the actual signatory on the Admission Contract."  Memo. in Support at 7.

Thompson also argues that THI of Baltimore is a proper party to the arbitration because, even if Grammar is not an employee of THI of Baltimore, THI of Baltimore's "exercise of supervision and control" was significant enough that it should be a party.  Memo. in Support at 7. Thompson references several cases where courts, including the United States Court of Appeals for the Tenth Circuit, have compelled arbitration of a non-signatory on the theory that the non-signatory was in a principal-agent relationship with the signatory or was the alter-ego of the signatory.  See id. at 8 (citing cases).  Thompson argues that THI of Baltimore exercised extensive control over Casa Arena, including setting financial and policy goals for Casa Arena, supervising operations, and carrying an insurance policy covering Casa Arena.  See id. at 9-10.  "Under these circumstances," Thompson maintains, "THI of Baltimore exercises sufficient control to be considered the alter-ego of Casa Arena and, in the interest of justice and equity, should be bound as the parent corporation to participate in the arbitration."  Id. at 10.

Finally, Thompson argues that THI of Baltimore should be estopped from arguing that it is not a proper party to the arbitration.  Thompson contends that a non-signatory can be compelled to arbitrate under an equitable-estoppel theory when there is "'substantial interdependence'" in the alleged misconduct of the signatory and of non-signatory parties, and when  the non-signatory has "'embraced and directly benefitted from the underlying contract.'"  Id. at 11 (quoting Murken v. Suncor Energy, Inc., 138 N.M. 179, 182, 183, 117 P.3d 985, 988, 989 (Ct.App. 2005)).  Thompson maintains that the present case passes this test, because his "claims against THI of Baltimore are

-13-

intertwined with the claims against Casa Arena and are based upon the same underlying facts," while THI of Baltimore benefitted from the fees paid to Casa Arena and from the arbitration clause in the Admissions Contract.  Memo. in Support at 12.

Thompson concludes with an argument for alternative relief, contending that, if the Court does not compel THI of Baltimore to arbitrate, then he should be granted leave to file an amended complaint against THI of Baltimore.  Thompson notes that, "given the delay in the identification of the question as to whether THI of Baltimore was a proper party to the arbitration," the statute of limitations for a wrongful-death action has expired.  Id. at 14.  Consequently, the amended complaint that Thompson wishes to file must relate back to the original complaint in this case. Thompson argues that this case meets the four elements necessary for relation-back under rule 15(c). See  Memo. in Support at 14-16.  Maintaining that THI of Baltimore would not be prejudiced and that leave to amend should be freely granted, Thompson contends that he should therefore be permitted to file an amended complaint against THI of Baltimore.  See Memo. in Support at 16.

Casa Arena argues that rule 60(b) relief is not appropriate because Thompson knew of the additional parties he is seeking to bring into the arbitration "on or before January 24, 2007, or approximately 14 months before filing his motion."  Defendant's Response to Plaintiff's Motion for Rule 60(b) Relief, filed April 7, 2008 (Doc. 19)("Response").  Before addressing the main arguments, Casa Arena maintains that Thompson's motion was improperly captioned, because THI of Baltimore and THI of New Mexico have not been added as defendants.  See id. at 1.

Casa Arena first argues that the Court should not grant the Rule 60(b) Motion because the relief that Thompson is requesting would require the Court to exercise jurisdiction over non-parties. Casa Arena contends that Tenth Circuit case law requires that, before a party is added to a dismissed case, the case must be re-opened and then the plaintiff must successfully move to amend under rule

15.  <u>See</u> Response at 2-3.  Additionally, Casa Arena notes that THI of Baltimore and THI of New Mexico have not been served.  Until all these requirements are met, Casa Arena maintains, the Court cannot compel THI of Baltimore and THI of New Mexico to engage in arbitration.  <u>See</u> Response at 3.

Casa Arena also disagrees with Thompson's view that the case can be brought under rule 60(b)(6).  According to Casa Arena, Thompson is "actually seeking relief from a mistake," which is rule 60(b)(1), and his motion is therefore time-barred because it was not brought within the one-year limitations period for such relief.  Response at 3.  Casa Arena cites to cases that have held that a failure to add a party because of mistaken identity is a tactical mistake.  <u>See id.</u> at 3-4.  Casa Arena also contends that, when the Court entered judgment in this case, it was clear the only parties the Court's enforcement of arbitration bound were Thompson and Casa Arena.  <u>See</u> Response at 4.  Casa Arena also argues that it is Thompson's fault that he did not move the Court to stay the case, or to reconsider its ruling, and did not appeal the Court's decision.  <u>See id.</u> at 5.  Moreover, Casa Arena contends that Thompson's reliance on the Request for Arbitration is misplaced, because that letter did not originate with Casa Arena or any potential defendant, while the Request for Dispute Resolver List only named Casa Arena as a respondent.  <u>See</u> Response at 6.  According to Casa Arena, "it was [Thompson's] mistake in not taking proper measures to ask [the] Court to add additional defendants," so Thompson's untimely request should be denied.  <u>Id.</u>

Casa Arena further argues that Thompson cannot escape the limitations period of rule 60(b)(1) by trying to recast his request as one under rule 60(b)(6).  The two rules are mutually exclusive, Casa Arena maintains, and thus relief that should be brought under rule 60(b)(1) cannot

be brought under a different provision.[5]

Even if Thompson properly brought this motion under rule 60(b)(6), Casa Arena argues, there are no extraordinary circumstances that would warrant such relief.  Casa Arena maintains that Thompson's inaction is not a basis for relief, and that relief should not be granted when the request is premised "upon misconduct or litigation choices made by the party seeking relief."  Response at 7.  According to Casa Arena, the only exceptional circumstances Thompson has identified are those of his own making and that any loss of rights he might suffer because of his decisions in the course of litigation are not extraordinary circumstances within the meaning of rule 60(b)(6).  See Response at 7-8.

Casa Arena further argues that equitable estoppel does not apply here because THI of Baltimore has consistently taken the position that it is not a party to either the arbitration or the lawsuit originally brought in federal court.  Casa Arena also maintains that Thompson's alternative relief is futile, because the statute of limitations bars his claims and relation-back is not available; Thompson was aware of the entities he seeks to add before the statute expired.  See id. at 10.  Casa Arena concludes with the argument that Thompson's request is contrary to arbitration's goal of swift resolution of disputes.  See id. at 10-11.

In reply, Thompson maintains that his motion should be still be granted.  Thompson first attacks Casa Arena's argument that, before his requested relief can be granted, the Court must reopen the case and Thompson must then receive leave to amend his pleadings.  Thompson contends that the cases Casa Arena cites deal with cases dismissed under rule 12(b)(6) and that Casa Arena's interpretation is contrary to the law as the Supreme Court of the United States has stated it.  See

---

[5] Although Casa Arena's heading to this argument states that rules 60(b)(1) and 60(b)(6) are not mutually exclusive, the argument is clearly that they are mutually exclusive.

Plaintiff's Reply to its Rule 60(b) Request for Leave, Motion to Compel Arbitration or Alternatively Motion to File Complaint for Wrongful Death, filed April 25, 2008 (Doc. 23)("Reply").

Thompson then argues that his request properly arises under rule 60(b)(6).  Thompson contends that Casa Arena relies on cases defining mistake for the purposes of rule 15, while the standard under rule 60(b)(1) is different.  The proper standard, Thompson asserts, is whether Thompson "'made an excusable litigation mistake or an attorney in the litigation has acted without authority,'" or whether the Court "'has made a substantive mistake of law or fact in the final judgment or order.'"  Reply at 6 (quoting <u>Yapp v. Excel Corp.</u>, 186 F.3d 1222, 1231 (10th Cir. 1999)).  Thompson maintains that his actions do not fall within this definition of mistake.  Rather, Thompson contends, subsequent developments such as the AHLA rules changes and THI of Baltimore's change of position regarding whether it would be a party to the arbitration are what led to the present motion. <u>See</u> Reply at 6-10.

Finally, Thompson argues that there are extraordinary circumstances warranting rule 60(b)(6) relief.  Thompson lays out several circumstances that he contends are, "either in isolation or cumulatively," sufficient to support his request.  Reply at 12.  Thompson argues that the AHLA rules change, THI of Baltimore's determination that the Court's order did not bind it to arbitration, and the possibility that he will lose his claims against THI of Baltimore all support relief.  <u>See</u> <u>id.</u> at 12-13.  Thompson also argues that THI of Baltimore has not had a consistent position with regards to the arbitration and that Casa Arena misrepresents Thompson's equitable-estoppel argument.  <u>See</u> Reply at 13-14.

At the hearing, CaraLynn Banks, Thompson's attorney, stated that she understood the Admission Contract's broadly worded arbitration clause to cover THI of Baltimore and that the Court's enforcement of that clause included THI of Baltimore.  <u>See</u> Transcript of Hearing at 8:24-

9:12 (taken May 14, 2008)(Banks)("Tr."). The Court asked why Thompson had not decided to seek a declaratory judgment that THI of Baltimore was Casa Arena's alter ego, which would make THI of Baltimore liable for payment of any judgment against Casa Arena. Ms. Banks stated that they had decided that rule 60(b) relief seemed the most appropriate avenue to take to get THI of Baltimore into the arbitration. See Tr. at 11:22-12:18 (Court & Banks). As a practical matter, Ms. Banks noted, Thompson needed THI of Baltimore as a party, because Casa Arena was underfunded and the insurance policy covering Casa Arena also covered about one-hundred other nursing homes and had an aggregate coverage limit that might have already been reached. See id. at 12:23-14:9.

The Court expressed its concern that it was a disputed issue whether THI of Baltimore was an alter-ego of Casa Arena and that it could not, without some way to resolve that, reopen the case on those grounds. Ms. Banks clarified that Thompson was not using the alter-ego theory as an extraordinary circumstance meriting relief, but to provide background; the extraordinary circumstances on which Thompson was mainly relying was THI of Baltimore's change in position regarding whether it was a party to the arbitration. See id. at 18:16-20:12. The Court asked what Thompson would do if his motion was denied. Ms. Banks stated that, in addition to proceeding with arbitration against Casa Arena, he might seek a declaratory judgment that THI of Baltimore was an alter-ego of Casa Arena and might consider adding THI of Baltimore to the state action against the pharmacy. See id. at 21:5-22.

Ms. Banks also stated that she did not believe that the Court made a mistake within the meaning of rule 60(b)(1), see Tr. at 27:19-28:12, and that she agreed that rule 60(b)(1) and 60(b)(6) were mutually exclusive, see Tr. at 29:6-9 (Banks). Ms. Banks informed the Court that the change made to the AHLA rules added the possibility of a court ordering arbitration, where previously it was just on the agreement of the parties, and that she had incorrectly indicated that the court-order

-18-

provision was in the conjunctive with agreement, when the provision was actually in the disjunctive and is an additional way to get into arbitration.  <u>See</u> Tr. at 31:9-32:11 (Court & Banks).  Ms. Banks stated that Thompson's position was that THI of Baltimore had agreed in writing to arbitrate.  <u>See</u> <u>id.</u> at 32:12-16.

The Court also asked whether it could consider the relief that Thompson was ultimately seeking -- an order that THI of Baltimore should be a party to the arbitration or allowing a motion to amend -- before or as part of reopening the case, or whether the decision to reopen the case was a separate one.  Ms. Banks stated that she believed that rule 60(b) relief was an independent action and that the Court should first decide whether to reopen the case, independent of whether it decides to grant or to deny the requested relief.  <u>See</u> Tr. at 39:24-41:3 (Court & Banks).

Tim Fields, Casa Arena's counsel, argued that Thompson had admitted in the briefing that he was seeking relief from a mistake and that thus the time limit in rule 60(b)(1) should bar relief.  <u>See</u> Tr. at 44:1-11 (Fields).  The Court expressed its concern that THI of Baltimore's absence from the arbitration could cause a problem, because Casa Arena might argue in the arbitration that THI of Baltimore was the responsible party and that Casa Arena did nothing wrong.  Mr. Fields stated that, as a practical matter, this argument would not be an issue, because Casa Arena did not dispute that the nurse whose actions are central to the issue of liability was a Casa Arena employee.  52:18-54:4 (Court & Fields).  Mr. Fields also stated that he did not consider the AHLA Rules change to be a material change, because it made explicit what had always been the case legally -- that a judge could order enforcement of an arbitration agreement.  <u>See</u> Tr. at 60:1-18 (Fields).

Ms. Banks then stated that, given the nature and timing of the Court's Final Judgment, Thompson did not have an opportunity to appeal or move to reconsider because he was not aware at that point of the need.  <u>See</u> Tr. at 62:12-25 (Banks).  Ms. Banks also stated that she still had

concerns about who the nurse's employer was, because none of the employees with whom she had spoken could definitively say who employed them.  See id. at 63:11-64:10 (Court & Banks).  Mr. Fields clarified that Casa Arena was conceding that the nurse was a Casa Arena employee.  See id. at 66:11-16 (Fields).

### LAW REGARDING RULE 60(b)

Rule 60(b) allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" in certain circumstances.  Two of those circumstances are at issue here: (i) relief from a mistake, under rule 60(b)(1); and (ii) relief for other justifiable reasons under the catch-all provision of rule 60(b)(6).  Rule 60(b) is an extraordinary form of relief.

**1.      Jurisdiction to Hear a Rule 60(b) Motion.**

The Supreme Court, in United States v. Baggerly, 524 U.S. 38 (1998),  found that a court which heard the original lawsuit has jurisdiction to consider a request for relief under rule 60(b).  See 524 U.S. at 46.  In reaching this conclusion, the Supreme Court noted that a rule 60(b) request for relief was an "independent action" to obtain relief from judgment and therefore the original court had jurisdiction to consider the request, without the need to resort to one of the obscure writs of the common law or for an independent basis for jurisdiction apart from the underlying lawsuit.  See id. at 43, 46.  The Supreme Court noted that the underlying lawsuit was a sufficient basis for jurisdiction.  See id. at 46.

**2.      Rules 60(b)(1) and 60(b)(6) are Mutually Exclusive.**

Rule 60(b) provides for relief from final judgment in six different circumstances.  The different provisions governing these circumstances, however, are "mutually exclusive." Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 393 (1993).  "[A] party who failed to take timely action due to" one of the reasons covered in rule 60(b)(1) "may not seek relief

more than a year after the judgment by resorting to subsection (6)."  Pioneer Inv. Services Co. v.

Brunswick Associates Ltd. Partnership, 507 U.S. at 393."  Rule 60(b)(6) "may only be invoked as

for causes *not* covered by another cause specifically enumerated in Rule 60(b)(1-5); otherwise, Rule

60(b)(6) would render the one-year limit applicable to Rule 60(b)(1-5) meaningless."  Plotner v. AT

& T Corp., 224 F.3d 1161, 1174 (10th Cir. 2000)(emphasis in original).

  **3.**  **Rule 60(b)(1).**

  Rule 60(b)(1) allows a court to order relief from final judgment for reasons of "mistake,

inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  A motion under rule

60(b)(1) must be filed within one year of the entry of judgment.  See Fed. R. Civ. P. 60(c)(1).  A rule

60(b)(1) request for relief for a mistake is available in two instances: "(1) when a party has made

an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2)

when a judge has made a substantive mistake of law or fact in the final judgment or order."  Yapp

v. Excel Corp., 186 F.3d at 1231.  "Excusable litigation mistakes are not those which were the result

of a deliberate and counseled decision by the complaining party . . . ," but are those "kinds of

mistakes that a party could not have protected against such as counsel acting without authority."

Id. (citing Cashner v. Freedom Stores Inc., 98 F.3d 572, 557 (10th Cir. 1996)).  "Thus, a party who

simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later,

once the lesson is learned, turn back the clock to undo those mistakes."  Yapp v. Excel Corp., 186

F.3d at 1231.  In Yapp v. Excel Corp., the Tenth Circuit held that the plaintiff's " careless or even

simple mistaken reliance upon the language in the proposed but unsigned settlement agreement and

his September 9, 1997, letter does not constitute the type of mistake deemed by this court as

excusable."  Id.

  As Nemaizer v. Baker, 793 F.2d 58 (2d Cir. 1986), a case that the Tenth Circuit cited in

Yapp v. Excel Corp, stated: "More particularly for our purposes, an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." Nemaizer v. Baker, 793 F.2d at 62.   As Nemaizer v. Baker noted, denial of relief has been "upheld despite the finding of a good faith mistake." Id. (citing United States v. O'Neil, 709 F.2d 361, 372 (5th Cir. 1983)).

"[T]he kinds of mistakes by a party that may be raised by a Rule 60(b)(1) motion are litigation mistakes that a party could not have protected against, such as the party's counsel acting without authority of the party to that party's detriment." Cashner v. Freedom Stores, Inc., 98 F.3d at 577.  "Rule 60(b)(1) relief has also been granted upon a showing of a party's excusable failure to comply with procedural rules." Cashner v. Freedom Stores, Inc., 98 F.3d at 578 (citing Wallace v. McManus, 776 F.2d 915, 917 (10th Cir. 1985)(per curiam)(finding "excusable neglect" under Rule 60(b) when a pro se prisoner let an appeal deadline lapse after notice of the entry of judgment was sent to her former attorney rather than to her)).  "When a party asserts an excusable failure to comply with procedural requirements, we have often imposed an additional requirement for Rule 60(b)(1) relief that the party demonstrate that his or her claim is 'meritorious.'" Cashner v. Freedom Stores, Inc., 98 F.3d at 578.

### 4.     Rule 60(b)(6).

Pursuant to rule 60(b)(6), "[o]n motion and upon just terms," a court may relieve a party from "a final judgment, order, or proceeding for . . . any other reason that justifies relief."  The Tenth Circuit has characterized Rule 60(b)(6) as "a grand reservoir of equitable power to do justice in a particular case." Cashner v. Freedom Stores, Inc., 98 F.3d at 579 (internal quotation marks omitted).  The rule "seek[s] to strike a delicate balance between countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that

-22-

justice be done in light of *all* the facts." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.,

715 F.2d 1442, 1444 (10th Cir. 1983)(quoting Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th

Cir. 1981)(emphasis added in the original)). The Tenth Circuit has also indicated that "Rule 60(b)

should be liberally construed when substantial justice will thus be served." Cessna Fin. Corp. v.

Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (internal citations omitted). Relief under

rule 60(b)(6) is within a court's discretion and can be granted in "exceptional circumstances" when

such relief is "necessary to accomplish justice." Cashner v. Freedom Stores, Inc., 98 F.3d at 579.

When "circumstances are so 'unusual or compelling' that extraordinary relief is warranted, or it

'offends justice' to deny such relief, [r]elief under Rule 60(b)(6) is appropriate." Cashner v.

Freedom Stores, Inc., 98 F.3d at 580 (quoting Pelican Prod. Corp. v. Marino, 893 F.3d 1143, 1147

(10th Cir. 1990). The Tenth Circuit noted that "[w]e have sometimes found such extraordinary

circumstances to exist when, after entry of judgment, events not contemplated by the moving party

render enforcement of the judgment inequitable." Cashner v. Freedom Stores, Inc., 98 F.3d at 579.

The standard is whether relief is warranted given the "extraordinary circumstances."

Servants of the Paraclete v. Doe, 204 F.3d 1005, 1009 (10th Cir. 2000). The Supreme Court

indicated that the term "extraordinary circumstances" contemplates that the party is "faultless" or

not "partly to blame." Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S.

at 393. Case law interpreting rule 60(b)(6) is consistent that relief is not proper based upon

misconduct or litigation choices made by the party seeking relief. See Blanchard v. Cortes-Molina,

453 F.3d 40, 44 (1st Cir. 2006)("To justify relief under Rule 60(b)(6), a party must show

extraordinary circumstances suggesting that the party is faultless in the delay. If a party is partly

to blame, Rule 60(b)(6) relief is not available."); Mitchell v. Hobbs, 951 F.2d 417, 420 (1st Cir.

1991)("Relief from judgment cannot be obtained under Rule 60(b)(6) unless the movant can

demonstrate that 'extraordinary circumstances' prevented a timely appeal."); Lehman v. United States, 154 F.3d 1010, 1017 (9th Cir. 1998)(holding that relief not proper when party did not act diligently to protect own rights).

**RELEVANT LAW ON ORDERING NON-SIGNATORIES
TO A CONTRACT TO ARBITRATE**

A non-signatory to an arbitration agreement generally cannot be forced to arbitrate claims. See AT&T Tech, Inc. v. Communication Workers of America, 475 U.S. 643, 649 (1986).  There are, however, exceptions to the general rule.  See id.  Specifically, courts have found that a non-signatory may, in the right circumstances, be bound by a contract containing an arbitration provision if the non-signatory has a principal/agent relationship or is the alter-ego of the signatory.  See ARW Exploration, Corp. v. Aguirre, 45 F.3d 1455, 1460-61 (10th Cir. 1995); Horanburg v. Felter, 136 N.M. 435, 439-40, 99 P.2d 685, 689-90 (App.Ct. 2004).  Although there are exceptions, "[c]ourts do not lightly pierce the corporate veil, even in deference to the strong policy favoring arbitration." ARW Exploration Corp. v. Aguirre, 45 F.3d at 1461 (internal quotation marks omitted).

The party attempting to prove that a corporation is the alter ego of another must show the alter-ego's dominance of the subsidiary, and "must prove that the subsidiary or other subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but that it functioned under the domination and control and for the purposes of some dominant party." Harlow v. Fibron Corp., 100 N.M. 379, 382, 671 P.2d 40, 43 (1983)(quotation omitted).  There are a number of factors, none of them dispositive, that a court should apply in determining whether one corporation or individual dominates a subservient corporation, such as whether:

(1) The parent corporation owns all or majority of the capital stock of the subsidiary.

-24-

(2) The parent and subsidiary corporations have common directors or officers.

(3) The parent corporation finances the subsidiary.

(4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(5) The subsidiary has grossly inadequate capital.

(6) The parent corporation pays the salaries or expenses or losses of the subsidiary.

(7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division.

(9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation.

(10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

Cruttenden v. Mantura, 97 N.M. 432, 434-35, 640 P.2d 932, 934-35 (1982).

Another theory potentially allowing non-signatories to be forced into arbitration is equitable estoppel. Equitable estoppel potentially applies "(1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantially interdependent and concerted misconduct by both another signatory and a non-signatory." Murken v. Suncor Energy, Inc., 138 N.M. at 182, 117 P.3d at 988 (internal quotation marks omitted). Equitable estoppel may also apply when non-signatories "knowingly exploit the agreement containing the arbitration clause." Id. In most cases, however, "courts held that the parties were estopped from avoiding arbitration because they had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves." Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir.

-25-

1995).  Courts have generally not estopped non-signatories from "denying the existence of an arbitration clause to which it is a signatory because no such clause exists."  Id.

## RELEVANT LAW REGARDING MOTIONS TO AMEND

Under the Federal Rules of Civil Procedure, if a claim asserted in an amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleadings, the amendment may relate back to the date of the original pleading.  See Fed. R. Civ. P. 15(c)(1).  Rule 15 (c) provides that, where an amendment would add a party, "relation back" can occur if the party to be brought in by the amendment "has received such notice of the initiation of the action that the party would not prejudice in maintaining a defense on the merits."  Brown v. Uniroyal, Inc., 108 F.3d 1306, 1307 (10th Cir. 1997).  Relation back is

> dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known, that but for the mistake concerning identity, the action would have been brought against it; and (4) the second and third requirement must have been fulfilled within the prescribed limitation.

Id. at 1307 (quoting Schiavone v. Fortune, 477 U.S. 21, 29 (1986)).  Relation-back is not allowed, however, where the amending party was aware of the prospective defendant within the statutory period.  See Wandrey v. Service Business Forms, Inc., 762 F.Supp. 299, 203-03 (D.Kan. 1991).

Tenth Circuit case law indicates that, before a party may be added to a dismissed case, there must be a rule 15 motion to amend.  See Calderon v. Kan. Dep't of Soc. and Rehabilitation Servs., 181 F.3d 1180, 1185 (10th Cir. 1999).  The Tenth Circuit noted that, "[i]f a party seeks to amend a pleading following the court's grant of a motion to dismiss, the party must first move to reopen the case under Fed. R. Civ. P. 59(e) or 60(b) and then file a motion under Fed. R. Civ. P. 15 for leave to amend."  Calderon v. Kan. Dep't of Soc. and Rehabilitation Servs., 181 F.3d at 1185.

-26-

<u>**ANALYSIS**</u>

Thompson requests that the Court, pursuant to rule 60(b), reopen this case and order THI of Baltimore to participate in arbitration before the AHLA.  The Court first must determine whether Thompson's stated grounds for relief fall within the terms of rule 60(b)(1) or rule 60(b)(6).  Some of the relief that Thompson seeks is relief from litigation mistakes that Thompson made while the case was still open and thus falls under rule 60(b)(1).  Rule 60(b)(1) motions, however, must be brought within one year of the entry of judgment.  Because this motion was filed more than a year after judgment, some of the relief that Thompson is pursuing is untimely.  The remaining grounds for relief Thompson that raises, however, involve THI of Baltimore's conduct after the Court dismissed this case and thus is properly brought under rule 60(b)(6).  This case, however, does not present sufficiently extraordinary circumstances, and justice does not require that the Court reopen the case.  Thompson also requests the alternative remedy of allowing him leave to amend his old Complaint.  That Complaint has been dismissed, however, and the Court cannot grant leave to amend without reopening the case.

**I.      THE ONE-YEAR LIMIT BARS THOMPSON'S MOTION TO THE EXTENT THAT THE MOTION SEEKS RELIEF UNDER RULE 60(b)(1).**

Casa Arena asserts that the Court should deny Thompson's motion because he is attempting to recast a time-barred rule 60(b)(1) motion as a timely rule 60(b)(6) motion.  Rule 60(b)(1) and rule 60(b)(6) are mutually exclusive forms of relief: what is properly a rule 60(b)(1) motion cannot be repackaged as a rule 60(b)(6) motion.  To the extent that the relief Thompson is seeking would be available under rule 60(b)(1), it is time-barred.  The Court concludes, applying the Tenth Circuit standard, that at least some of the relief Thompson is seeking can be categorized as seeking rule 60(b)(1) relief.

### A.   RULE 60(b)(1) AND RULE 60(b)(6) ARE MUTUALLY EXCLUSIVE.

Under rule 60(b), a party can seek relief from final judgment in six different circumstances. The different provisions of rule 60(b) governing these circumstances, however, are "mutually exclusive." Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. at 393. "[A] party who failed to take timely action due to" one of the reasons covered in rule 60(b)(1) "may not seek relief more than a year after the judgment by resorting to subsection (6)." Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. at 393.  Rule 60(b)(6) "may only be invoked as for causes *not* covered by another cause specifically enumerated in Rule 60(b)(1-5); otherwise, Rule 60(b)(6) would render the one-year limit applicable to Rule 60(b)(1-5) meaningless." Plotner v. AT & T Corp., 224 F.3d at 1174 (emphasis in original).

The parties agree that rules 60(b)(1) and 60(b)(6) are mutually exclusive. See Response at 7; Tr. at 29:6-9 (Banks).  The case law makes it clear that a party cannot pursue relief under rule 60(b)(6) if the basis for the relief is one of the reasons that is listed in rule 60(b)(1).  Rule 60(b)(1), unlike rule 60(b)(6), contains a strict limitations period requiring that a party move to reopen proceedings within one year of the entry of judgment. See Fed. R. Civ. P. 60(c)(1).  Thompson concedes that his motion would be untimely under the rule 60(b)(1) limits. See Memo. in Support at 4 & n. 1.  Accordingly, to the extent that Thompson's motion could have been brought under rule 60(b)(1), it is time-barred.

### B.   SOME OF THE RELIEF THOMPSON SEEKS IS TIME-BARRED.

While rule 60(b)(1) encompasses a variety of reasons for seeking relief, only one is at issue here: whether Thompson requests relief on the grounds of party or attorney mistake.  The question is whether Thompson is seeking relief because of "an excusable litigation mistake." Yapp v. Excel Corp., 186 F.3d at 1231.  Casa Arena contends that Thompson failed either to file motions to stay

the case or motions to reconsider, or to appeal in light of new information, and that these failures constitute litigation mistakes the fall within the scope of rule 60(b)(1).  There are three potential occurrences which could have prompted Thompson to act that the Court must consider: (i) the change in the AHLA rules; (ii) Thompson's learning about THI of Baltimore's control over Casa Arena; and (iii) THI of Baltimore's position on whether it was a party to arbitration after the Court dismissed the federal case.  The first and third possibilities are immaterial in a rule 60(b)(1) context, while the second did not lead to an excusable litigation mistake.

The Court does not view the AHLA rules change as being material information.  As Thompson notes, he erroneously read the rules change to add an additional requirement that a judge order arbitration before the AHLA would arbitrate a case.  See Tr. at 31:9-32:11 (Court & Banks).  The new AHLA rules, however, read: "Effective June 2006, the [AHLA] will administer a 'consumer health care liability claim' . . . only if (1) all of the parties have agreed in writing to arbitrate the claim after the injury occurred . . . or (2) a judge orders that the [AHLA] administer an arbitration under the terms of a pre-injury agreement."  AHLA Rules art. 1.01.  The amendment added the second grounds for arbitration in the disjunctive.  Given the longstanding law that a court can order the enforcement of an arbitration clause in a contract, the amendment seems to be merely clarifying.[6]  This understanding is also implicit in the parties' assumption that the Court could order Casa Arena and Thompson -- who had a pre-injury agreement to arbitrate in the Admission Contract, but no post-injury agreement -- to arbitrate under AHLA auspices even before the clarifying

---

[6] As the Court discussed in its earlier Memo., in 1925, Congress passed the Federal Arbitration Act to overrule the previous longstanding judicial practice of refusing to enforce arbitration provisions.  See Memo. at 6-7.  The Supreme Court has, for some time now, acknowledged the strong public policy in favor of arbitration.  See Southland Corporation v. Keating, 465 U.S. 1, 10 (1984).

amendment.  The amendment therefore did not add any new barriers to arbitration; the amendment only clarified the existing routes to arbitration -- a clarification that, given the parties' understanding, does not appear to have been necessary for them.  Because the amendment did not make any genuine modification, the Court does not see the change as relevant to its analysis.

Additionally, the Court does not view any position that THI of Baltimore may or may not have taken after the Court ordered arbitration as being relevant to its analysis under rule 60(b)(1).  Events after the Court entered judgment and closed the case, and that are also beyond the time-frame for the filing of a motion to reconsider or an appeal, do not enter the calculus of whether a litigation mistake occurred during the course of the case.  See Yapp v. Excel Corp., 186 F.3d at 1231 (noting that rule 60(b)(1) mistakes are limited to parties' excusable litigation mistakes, attorneys acting without authority, and judges making substantive mistakes of law or fact).  Such events are post-litigation matters and are not the subject of rule 60(b)(1).  Although Casa Arena argues that Thompson was mistaken that THI of Baltimore consented to arbitration, Casa Arena does not explain how such events would bear on whether a litigation mistake occurred during the case.  The one-year time limit indicates that rule 60(b)(1) is directed at litigation mistakes.  Moreover, the Tenth Circuit case law on rule 60(b)(1) focuses on events during litigation.  See  Yapp v. Excel Corp., 186 F.3d at 1231 (stating the rule 60(b)(1) allows for relief from mistakes that are "excusable litigation mistakes").  Events that come after a case is closed are more properly considered under rule 60(b)(6).  See Cashner v. Freedom Stores, Inc., 98 F.3d at 579 (noting that rule 60(b)(6) has been found to be available where "events not contemplated by the moving party render enforcement of the judgment inequitable").  The Court will consider Casa Arena's arguments about the arbitration proceedings in the context of rule 60(b)(6).

The essential question then is whether Thompson is seeking relief from a litigation mistake

in failing to move for a stay or to reconsider, or in failing to appeal, after learning about the level of THI of Baltimore's control over Casa Arena.  The mistakes of an attorney or party that rule 60(b)(1) covers are fairly narrow.  "Excusable litigation mistakes are not those which were the result of a deliberate and counseled decision by the complaining party . . . ;" rather, they are the "kinds of mistakes that a party could not have protected against such as counsel acting without authority." Yapp v. Excel Corp., 186 F.3d at 1231.  Under this standard, Thompson's activities do not come under the definition of an excusable litigation mistake.

Thompson's decision to not move for a stay or reconsideration, or to appeal, was a deliberate decision.  Thompson had filed a Motion to Amend.  He was aware of THI of Baltimore and had an obvious desire to pursue litigation against THI of Baltimore.  Thompson took no action in this Court after the entry of judgment on the basis of a belief that the Court's order to arbitrate applied to THI of Baltimore as well as to Casa Arena.  See Tr. at 32:12-16 (Court & Banks).  Rule 60(b)(1) is for mistakes that a party could not protect against.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. A deliberate decision based upon counsel's understanding of the law or court rulings is not a basis for relief under rule 60(b)(1).  See Yapp v. Excel Corp., 186 F.3d at 1231 ("Thus, a party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes.").  This principle is true even if the mistake is a good-faith one.  See Nemaizer v. Baker, 793 F.2d at 62.

The Court's September 12, 2006 order cannot be read as ordering THI of Baltimore to participate in arbitration.  The Court's opinion states: "[T]he parties are ordered to follow the arbitration agreement's provisions as expressed in the Admission Contract."  Memo. at 27. Thompson and Casa Arena were the only parties to the case at the time the Court entered its order. That the Motion to Amend to add THI of Baltimore was still outstanding underscores that THI of

Baltimore was not a party to the case and that a decision of the Court was necessary to bring THI of Baltimore into the case.  Throughout the Court's opinion, Casa Arena and Thompson are mentioned frequently.  THI of Baltimore is not referenced at all.  The wording of the opinion cannot be read as reasonably applying to THI of Baltimore.

For Thompson's reliance to have been reasonable assumes the validity of his assertions about THI of Baltimore.  THI of Baltimore might have been a proper party to the case, but those issues were never decided.  In these circumstances, Thompson mistakenly interpreted the legal effect of a court order.  That misinterpretation is a mistake, and not an excusable litigation mistake as the Tenth Circuit defines the term.  See Yapp v. Excel Corp., 186 F.3d at 1231.

Thompson's emphasis on the language of the Admission Contract does not save his position.  The Admission Contract refers to Casa Arena as the corporate party.  The Addendum also refers to Casa Arena as a "Trans Health corporation," but there is no indication in either the Admission Contract or the Addendum that THI of Baltimore is a party to the contract.  The language in the arbitration clause that Thompson emphasizes, that the arbitration clause applies to "***agents, employees or representatives,***" thus refers to agents and employees of Casa Arena.  Reply at 8 (quoting Admission Contract at 5)(emphasis in Reply).  While Casa Arena might be an agent of THI of Baltimore, it is not the case that THI of Baltimore is an agent of Casa Arena.  Read in tandem with the Admission Contract, the Court's order enforcing the terms of the arbitration clause cannot fairly be understood as applying to THI of Baltimore, the parent company of the corporate party to the contract.  In sum, Thompson committed a litigation mistake, but not an excusable one, because the mistake was based on a legal misunderstanding.  See Yapp v. Excel Corp., 186 F.3d at 1231.

Although Thompson's mistakes were not excusable litigation mistakes, a question remains whether that situation comes within the scope of rule 60(b)(1).  There is some ambiguity in the case

law about whether an "excusable litigation mistake" is the standard for bringing a claim within the terms of rule 60(b)(1) at all, or is only the standard for granting relief pursuant that rule, which covers litigation mistakes more generally.  In other words, under one interpretation, "mistake" may encompass a broader spectrum of activities, but only those that are "excusable litigation mistakes" qualify for relief.  Under another interpretation, "excusable litigation mistake" might cover the entire range of mistakes under rule 60(b)(1).  The Tenth Circuit case law has not addressed this distinction.[7]  There are some hints that "excusable litigation mistake" is the threshold standard for rule 60(b)(1) applying.  In Cashner v. Freedom Stores, Inc., the Tenth Circuit referred to excusable litigation mistakes as the "the kinds of mistakes by a party that may be raised by a Rule 60(b)(1)," 98 F.3d at 577, and referred to other mistakes as the "kinds of party mistakes that have been held not to state a claim under Rule 60(b)(1)," id.  The Tenth Circuit has not directly addressed the issue, however, and even "stating a claim" might be understood as applying to stating a justifiable claim, rather than to delineating the outer boundaries of rule 60(b)(1) mistakes.

It would be odd that a strict period of limitations would apply to cases that could be considered "excusable litigation mistakes," while motions based on what might be called inexcusable litigation mistakes would be subject to rule 60(b)(6)'s more relaxed standards for timeliness.  It would also be odd to say that only those mistakes that are excusable and thus deserving of relief can be brought under rule 60(b)(1).  It makes more sense to assume that some mistakes are within rule 60(b)(1) but that relief cannot be granted for all of them.  It would also be

---

[7] The Tenth Circuit has not addressed this issue, perhaps, because of the doctrine that a court need not "rigidly compartmentalize" review of a rule 60(b) motion when the motion would be timely under any provision.  Lindberg v. United States, 164 F.3d 1312, 1322 (10th Cir. 1999); Pelican Production Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990).  In this case, however, a rule 60(b)(1) motion would be untimely, so the Court must parse out the bases for relief.

odd to conclude that the highly modified phrase "excusable litigation mistake" was meant to replace the word "mistake" that actually appears in the Federal Rules of Civil Procedure. Finally, given the equitable focus of rule 60(b), it makes more sense to read the Tenth Circuit's "excusable litigation mistake" standard as setting the test for relief rather than tracing the outlines of the scope of a mistake. All of these reasons counsel in favor of reading "excusable litigation mistakes" to be the subset of mistakes under rule 60(b)(1) for which relief is available.

Within the Tenth Circuit, the District Court for the District of Kansas has confronted the issue whether excusable litigation mistake defines the outer limits of rule 60(b)(1), and concluded that excusable litigation mistake does not define the outer limits of rule 60(b)(1), that other litigation mistakes are also within the scope of rule 60(b)(1), and that the similar issue whether rule 60(b)(1)'s "excusable neglect" prong means "inexcusable neglect" is a basis for rule 60(b)(6) relief. See Sprint Spectrum, L.P. v. Mega PC & Communications, Inc., 2006 WL 1794757 at *4-5 (D.Kan.)(inexcusable neglect not basis for rule 60(b)(6)); United States v. Harbert-Yeargin, Inc, 1997 WL 809266 at *1-2 (D.Kan)(refusing to adopt standard pioneered in L.P. Steuart, Inc. v. Matthews, 329 F.2d 234, 235-36 (D.C.Cir. 1964), of not imputing gross negligence to client, and allowing 60(b)(6) relief). The United States Court of Appeals for the District of Columbia has adopted a standard that allows for gross attorney negligence to be a basis for relief under rule 60(b)(6) rather than rule 60(b)(1), but on the grounds that such conduct should not be imputed a client. Thompson is not making such an argument, and the Court sees no basis for such a contention. The Court concurs with the conclusion the District of Kansas has reached, which gives more meaning to the word "mistake" than would assuming "excusable litigation mistake" embraced the entire universe of mistakes that had to be brought under rule 60(b)(1).

Accordingly, to the extent that Thompson relies on learning about AHLA rules changes or

THI of Baltimore's control over Casa Arena, he is seeking relief for a litigation mistake and his motion is untimely.[8]  At the hearing, however, Thompson relied most heavily on THI of Baltimore's conduct after the Court granted the Motion to Compel and dismissed the case in favor of arbitration and also depends upon it in his Reply.  To the extent that Thompson relies on THI of Baltimore's post-dismissal conduct, he is able to bring his arguments out from under rule 60(b)(1)'s focus on mistakes occurring during litigation and proceed under rule 60(b)(6).

## II.    THIS CASE DOES NOT INVOLVE EXCEPTIONAL CIRCUMSTANCES FOR WHICH RELIEF FROM THE COURT'S FINAL ORDER IS NECESSARY TO ACCOMPLISH JUSTICE AND TO ADDRESS INEQUITY.

Although rule 60(b)(6) is "a grand reservoir of equitable power to do justice in a particular case," Cashner v. Freedom Stores, Inc., 98 F.3d at 579 (internal quotation marks omitted), that power is tempered by the rigorous standard that must be met before the Court uses that power. "Rule 60(b)(6) relief is even more difficult to attain" than relief under the other sections of rule 60(b).  Yapp v. Excel Corp., 186 F.3d at 1232.  A case may be reopened under rule 60(b)(6) "only in extraordinary circumstances and only when necessary to accomplish justice."   Cashner v. Freedom Stores, Inc., 98 F.3d at 579.  This case does not present any extraordinary circumstances that warrant relief under rule 60(b)(6).  The Court bases this conclusion primarily on two factors: (i) the situation from which Thompson is trying to extricate himself is largely his own fault; and (ii) because there are other possible forms of relief available, denial of the Rule 60(b) Motion will not foreclose all relief.  Additionally, the Court has given some consideration to the underlying merits, and it appears that, on the record before the Court, even if the Court reopened the case, it might not

_____

    [8] Even if inexcusable litigation mistakes were valid grounds for a rule 60(b)(6) motion, in general, because of their inherent element of fault, allowing them to brought would not ultimately allow for relief.  In this particular case, even if the Court concluded that all of Thompson's motion was timely, the Court would still not find adequate grounds to grant rule 60(b)(6) relief.

order THI of Baltimore to participate in arbitration.

### A.   THOMPSON IS LARGELY AT FAULT FOR THE UNDERLYING SITUATION FROM WHICH HE SEEKS RELIEF.

Thompson cannot escape that his predicament is largely a result of his own misinterpretation of the Court's order, which alone is all but fatal to his request.  See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. at 393 (holding that extraordinary circumstances contemplates moving party being "faultless" or not "partly to blame").  Although focusing on THI of Baltimore's conduct after the Court entered its order allows Thompson to fit within rule 60(b)(6), this analysis does not aid Thompson much.  Thompson's case ultimately still depends upon what occurred during the federal-court phase of litigation.  Thompson's belief that THI of Baltimore was a party to the arbitration appears to come largely as a result of Thompson's understanding of the Court's order.   If the Court's order applied to THI of Baltimore originally, then Thompson could be prejudiced, because of THI of Baltimore's later recalcitrance in arbitration.  Because the Court's order, however, did not apply to THI of Baltimore in the first place, Thompson lacks a solid basis for showing that injustice would result from a failure to reopen the case.

Even if THI of Baltimore understood the Court's rulings the same as Thompson did and was deliberately being evasive whether it was a party to the arbitration, there is little harm, because the Court's order did not require THI of Baltimore to submit to arbitration.  If THI of Baltimore had told Thompson in January 2007 that it did not consider itself bound to arbitrate and Thompson had promptly filed a rule 60(b)(1) motion, the Court would have denied the motion because Thompson would have been seeking relief from a inexcusable litigation mistake.  THI of Baltimore's post-dismissal conduct would, for the most part, only be harmful to Thompson's position if Thompson were correct that the Court's order applied to THI of Baltimore.  An argument that the Court should

-36-

or could have ordered THI of Baltimore to arbitrate brings the claim within the ambit of rule 60(b)(1), because the failure to add THI of Baltimore during the federal litigation would have been a tactical litigation mistake.

Thompson also has an argument that, regardless of the scope of the Court's order, THI of Baltiomre consented or acquiesced to arbitration.  Additionally, although not Thompson has not raised this point, the Court could envision Thompson being prejudiced because of THI of Baltimore's conduct for other reasons.  For instance, assuming that Thompson was correct that THI of Baltimore was evasive about its position on arbitration, Thompson might have filed an independent and timely action against THI of Baltimore if he knew earlier that THI of Baltimore was unwilling to arbitrate.  The potential egregiousness of THI of Baltimore's actions, however, would still be lessened by the fact that it was not required to arbitrate.  Moreover, THI of Baltimore's conduct does not strike the Court as disingenuous, nor does the Court see, on the record before it, reasonable grounds for concluding that THI of Baltimore consented to arbitration.[9]

THI of Baltimore may be playing hardball litigation, but the Court does not see that it misled Thompson.  The Request for Arbitration was apparently never sent to THI of Baltimore or Casa Arena, and it is that document which most clearly supports Thompson's stance, given the document's explicit naming of THI of Baltimore and the allegations it makes of THI of Baltimore's controlling Casa Arena.  See Request for Arbitration at 1, 6.  By contrast, the Request for Dispute Resolver List -- which is the document Casa Arena received and which, according to the AHLA, is also the document that serves to initiate arbitration -- is at best ambiguous.  Two entities are listed

---

[9] An argument that THI of Baltimore consented and then later revoked its consent also seems to the Court be independent of its order.  It is not clear that such a situation would necessarily be a basis for relief from judgment because it is not tied to the Court's order.  It seems to the Court that the AHLA arbitrator could entertain Thompson's consent argument.

as parties on the list: (i) "Casa Arena Blanca Nursing Ctr."; and (ii) "THI of New Mexico, LLC d/b/a Casa Arena Blanca Nursing Ctr."  Request for Dispute Resolver List at 3.  No other party beside Omnicare is listed as being directly involved in the dispute.  See id. at 4.  The list is noticeably less specific than the detailed statement of prospective defendants that Thompson included on the Request for Arbitration.  See Request for Arbitration at 1 (naming, among others, Casa Arena, THI of Baltimore, and all subsidiaries and successors generally).  While Thompson writes that he "assumes THI will assume the costs of litigation," without specifying which THI, the clarifying footnote Ms. Bootes added explicitly references that "THI of New Mexico, LLC d/b/a Casa Arena Blanca Nursing Center will agree to bear its share of the costs for arbitration but will not agree to assume the entire cost."  Id. at 6.  Nowhere is THI of Baltimore mentioned.  Thompson's remark about THI bearing the costs of litigation is ambiguous and could refer to THI of Baltimore, but the footnote tends to foreclose this interpretation.  Moreover, given the proliferation of THIs potentially involved in the case, it would be incumbent upon Thompson to be precise about which entities he was naming as a defendant.

The captions in the letters and arbitration documents add some ambiguity to the mix, but do not ultimately allow Thompson's position to prevail.  The caption in a letter that the AHLA sent to both Ms. Banks and Ms. Bootes, confirming receipt of the Request for Dispute Resolver List, indicates "THI of New Mexico at Casa Arena Blanca d/b/a Casa Arena Blanca Nursing Center, et al."  Exhibit B to Reply, Letter from Rita D. Brinley to CaraLyn Banks & RaMona G. Bootes at 1 (dated March 27, 2007)(Doc. 23-3)("Confirmation Letter").  While the "et al" indicates multiple defendants, the Request for Dispute Resolver List named two defendants: (i) Casa Arena; and (ii) THI of New Mexico d/b/a Casa Arena.  See Request for Dispute Resolver List at 3.  Thus, the Confirmation Letter's caption is consistent with THI of Baltimore not being a party to the arbitration

and would not put Ms. Bootes on notice to inquire whether THI of Baltimore was being named as a defendant. Later, the Arbitrator's Order bears a caption that expressly lists THI of Baltimore as a defendant, but this order was issued after the dispute over THI of Baltimore's status occurred. There is no indication in the record that any arbitration documents listed THI of Baltimore as a defendant before Thompson's discovery requests met resistance from THI of Baltimore and before the issue became clear to all sides.

Given that THI of Baltimore was never added to the federal case and was also not clearly named as a defendant in arbitration until after the discovery dispute, THI of Baltimore's position was reasonable. When the issue first came to a head, during the discovery dispute, THI of Baltimore immediately took the position that it was not a party to the arbitration. The Court does not see in the record before it any evidence that THI of Baltimore should have made such a statement earlier than it did.

Accordingly, because THI of Baltimore's actions appear reasonable and not deceptive, and because Thompson was relying on an incorrect assumption about the Court's order, Thompson's situation was one for which he was largely to blame. While THI of Baltimore's refusal to arbitrate may have been, from Thompson's perspective, an unexpected event occurring after the litigation, the refusal was unexpected only because of a mistaken belief. THI of Baltimore's refusal to arbitrate is therefore not the kind of event "not contemplated by the moving party" that would "render enforcement of the judgment inequitable." Cashner v. Freedom Stores, Inc., 98 F.3d at 579. THI of Baltimore's position was consistent with the Court's order. Thompson's position is understandable, and given his understanding upon entering into the arbitration, the Court can see how Thompson would come to view THI of Baltimore's protests when the discovery dispute flared up as being a dishonorable retreat from THI of Baltimore's supposed acquiescence to arbitration.

While Thompson's position is understandable, it is not legally reasonable, because it was the result of a unilateral mistake.

### B.   DENIAL OF THOMPSON'S MOTION WOULD STILL LEAVE OPEN OTHER OPTIONS FOR RELIEF.

While the rule 60(b)(6) analysis that courts have employed focuses on fault, what the movant stands to lose if his motion is denied is certainly part of the equation.  See Thompson v. Kerr-McGee Refining Corp., 660 F.2d 1380, 1385 (10th Cir. 1981)("[Rule 60(b)] should be liberally construed when substantial justice will thus be served.")(citing Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)).  What is in jeopardy for Thompson is his right to proceed against THI of Baltimore.  Thompson, however, will potentially have other options available to him even without the relief he seeks from the Court.

Although the Court cannot say, based on the record before it, that THI of Baltimore is an alter ego of Casa Arena, Thompson has assembled some evidence pointing to that conclusion.  If he succeeds in his arbitration against Casa Arena, he may be able to collect from THI of Baltimore by proving alter-ego status, without the statute of limitations for wrongful-death actions barring the suit.  See Certain Underwriters at Lloyd's London v. Nance, 2007 WL 5231710 at *10-11 (D.N.M.)(Browning, J.)(discussing New Mexico law on alter-egos and piercing the corporate veil); Certain Underwriters at Lloyd's London v. Nance, 2007 WL 2219454 at *2-3 (D.N.M.)(Browning, J.)(holding that plaintiff may proceed against alter-ego to collect on a judgment under the statute of limitations applicable to collections on judgments).  Additionally, the threat of such a determination might persuade THI of Baltimore to voluntarily submit to arbitration to be able contest liability in the arbitration.

Thompson also is currently pursuing litigation in New Mexico state court against one of Casa

Arena's pharmacy providers.  As Ms. Banks stated at the hearing, if the Court were to deny Thompson's motion, it is possible that Thompson might be able to add THI of Baltimore to the state-court action.  <u>See</u> Tr. at 21:5-22 (Banks).  Thompson would then be able to proceed directly in a court against THI of Baltimore.

Thompson's concern -- that continuing arbitration without THI of Baltimore as a party will extinguish any claims he may have against THI of Baltimore -- also seems unfounded.  The AHLA rules provide that an arbitrator's decision "extinguishes any rights pertaining to the subject matter of the arbitration against any other entity controlled by, in control of, or under common control with the party unless the party having the claim against such affiliates gives timely notice to such affiliates inviting the affiliate to participate in the arbitration."  AHLA Rules art. 6.06.  Even though the Court does not believe that THI of Baltimore was named as a defendant in Thompson's original request for arbitration, THI of Baltimore was clearly aware of the arbitration against its subsidiary from the beginning, and early in the arbitration, during discovery, it also became clear that Thompson was seeking arbitration against THI of Baltimore.  It is therefore possible that the arbitrator's decision would not have any preclusive effect against whatever claims Thompson might be able to assert against THI of Baltimore.  At the hearing, Mr. Fields also conceded that a nurse who would be a focal point of the litigation was a Casa Arena employee, which would reduce the ability or incentive of Casa Arena to argue that THI of Baltimore, a non-party in the arbitration, was the liable party.  <u>See</u> Tr. at 66:11-16 (Fields).

None of these options is certain to succeed, of course.  Their existence, however, and the potential that they give Thompson to effectively pursue his claims against THI of Baltimore, lessen the justification for reopening the case under rule 60(b)(6).  The standards for rule 60(b)(6) are stringent.  Where other forms of relief might be available, the balance of equities will generally

favor the law's interest in finality.  Cf Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.,

715 F.2d at 1444 (discussing how rule 60(b) seeks to strike a balance between finality and doing

justice).

> ### C.    THOMPSON'S CLAIMS MIGHT BE FUTILE.

The Court's decision principally rests on its balancing of the equities in light of Thompson's

fault, THI of Baltimore's relative lack of blame, and the effect denial of his motion would have on

Thompson's options for relief.  The result of these considerations is a sufficient basis for denial of

the motion.  The Court has also, however, given some consideration whether the Court would order

the relief that Thompson seeks were the case to be reopened.  Without deciding the issue on the

merits, it appears to the Court that Thompson's request might be futile.  Denying a motion to reopen

when the ultimate relief sought is unlikely to be allowed is more equitable than denying a motion

to reopen when the movant has a strong and meritorious case.[10]  Thompson's arguments for

compelling THI of Baltimore to join in the arbitration before the AHLA are not particularly strong

on the current record, further tipping the balance of equities in favor of denial of the Rule 60(b)

Motion.  Thompson advances three different theories for why THI of Baltimore should be compelled

to arbitrate pursuant to the Admission Contract: (i) that an employee of THI of Baltimore signed the

Admission Contract and THI of Baltimore is thus a signatory; (ii) that THI of Baltimore's exercise

of control over Casa Arena requires THI of Baltimore to arbitrate alongside Casa Arena; and (iii)

that THI of Baltimore is equitably estopped from denying that it should be a party to the arbitration.

---

[10] While the Tenth Circuit does not appear to have engaged in merits analysis in reviewing rule 60(b)(6) claims, it also has not foreclosed such an approach.  A similar approach, requiring a showing of a meritorious defense, is used for motions seeking relief from a default judgment. Moreover, the test under rule 60(b)(6) is fairly strict, but also fairly open in how it is construed -- the purpose of the rule, after all, is to do justice.

1.     **The Court Cannot Say That THI of Baltimore was the True Signatory to the Admission Contract.**

Thompson's first argument on the merits is that THI of Baltimore employees were the actual executors of the Admission Contract.  The evidence does not support this factual assertion.  Nowhere in the Admission Contract is THI of Baltimore mentioned.  Casa Arena is described as a Trans Health corporation in the Addendum, but that is merely a description of corporate structure; it does not indicate that the parent company is the party.  Thompson rests his case principally on Dayna Grammar being an employee of THI of Baltimore.  See Memo. in Support at 6-7.  Grammar, however, signed as a representative of Casa Arena.  See Admission Contract at 6.  The evidence Thompson offers from Hicks' deposition is insufficient to overcome the Admission Contract stating that Grammar was signing as a Casa Arena agent.  Hicks discusses THI of Baltimore's setting policy for Casa Arena, see Hicks Depo. at 34:18-36:20, 47:13-48:24, and his understanding that a THI of Baltimore manager was his boss, see id. at 44:12-21.  Hicks' testimony does not, however, establish that Casa Arena employees should be understood as THI of Baltimore employees vested with the authority to enter into contracts on behalf of THI of Baltimore.

Nor is THI of Baltimore's provision of admissions contracts to Casa Arena persuasive evidence that THI of Baltimore should be considered the real signatory.  Thompson somewhat overstates the evidence here: Hicks testified that THI of Baltimore provided the contracts, but he does not say that THI of Baltimore necessarily drafted the contracts.  See Hicks Depo. at 50:4-9.  But even if THI of Baltimore drafted the Admission Contract, the Court does not see how that would make THI of Baltimore any more a party to the contract than an attorney drafting an agreement for a client would be a party to those contracts by virtue of his work.

-43-

2. **The Court Cannot Say That THI of Baltimore's Control of Casa Arena was Such That THI of Baltimore Should be Required to Arbitrate.**

A non-signatory corporation may be forced into arbitration because of a subsidiary's contract, but courts will not order such relief lightly. "Courts do not lightly pierce the corporate veil, even in deference to the strong policy favoring arbitration." ARW Exploration Corp. v. Aguirre, 45 F.3d at 1461 (internal quotation marks omitted). One of the cases on which Thompson relies, ARW Exploration Corp. v. Aguirre, although dealing with an individual shareholder rather than a parent corporation, noted that a "district court must determine whether a corporation contractually bound to arbitrate is the alter ego, under applicable principles of corporate law, of a shareholder *before* subjecting that shareholder to binding arbitration." Id. (emphasis in original).

The alter-ego theory entails meeting a rather heavy burden. The party attempting to prove that a corporation is the alter ego of another must show the alter-ego's dominance of the subsidiary, and "must prove that the subsidiary or other subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but that it functioned under the domination and control and for the purposes of some dominant party." Harlow v. Fibron Corp., 100 N.M. at 382, 671 P.2d at 43 (quotation omitted).[11]

While THI of Baltimore's general exercise of control over Casa Arena seems significant

_____

[11] Although neither party raises the issue, the Court will assume for the purposes of this motion that the appropriate law to apply in determining whether THI of Baltimore is the alter ego of Casa Arena is New Mexico state law. Thompson has relied on New Mexico law. Additionally, Thompson is raising the equitable remedy of alter ego and piercing the corporate veil based on a tort allegedly committed in New Mexico. Federal courts apply the conflict-of-law rules of the state in which they sit, see Memorial Hosp. of Laramie County v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir. 2007), and New Mexico law dictates that a court should apply the law of the place where the harm occurred in tort actions, see Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 12, 140 N.M. 293, 142 P.3d 374, 377. The Court is not aware of anything in the Federal Arbitration Act that would preempt state law in this situation.

based on the record before the Court, it also appears that THI of Baltimore was not intimately involved in the day-to-day operations of Casa Arena, which were ultimately Hicks' responsibility. See Hicks Depo. at 31:12-24.   Additionally, the evidence seems to be that Casa Arena was independently financially stable and able to maintain its payroll without subsidization from THI of Baltimore.  See id. at 46:4-22.  Of the numerous factors that a court should weigh in considering the element of domination, some favor finding THI of Baltimore to be alter ego, such as THI of Baltimore's ownership of Casa Arena and exercise of management control.  See Cruttenden v. Mantura, 97 N.M. at 434-35, 640 P.2d at 934-35 (listing factors).  Other factors, however, point in the opposite direction, such as Casa Arena's lack of subsidization.  Many factors are uncertain in the record, such as whether corporate formalities are observed at Casa Arena and whether Casa Arena or THI of Baltimore issues Casa Arena employees their checks.  The burden, though, rests with Thompson, and, while the Court need not, and will not, decide this issue on the merits, the Court cannot say that Thompson has, on the record before it, carried his burden of proving alter-ego status.

### 3.  The Court Cannot Say That THI of Baltimore is Estopped from Refusing to Arbitrate.

Equitable estoppel may compel a party to arbitrate: "(1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantially interdependent and concerted misconduct by both another signatory and a non-signatory."  Murken v. Suncor Energy, Inc., 138 N.M. at 182, 117 P.3d at 988 (internal quotation marks omitted).  Equitable estoppel may also apply when non-signatories "knowingly exploit the agreement containing the arbitration clause."  Id.  New Mexico does not seem to have formally adopted equitable estoppel.  Rather, New Mexico has acknowledged the theory and seems,

to date, to have found only that, even if the theory were recognized, it would not apply.  See id. at

183, 117 P.3d at 989 ("Accordingly, even if New Mexico recognized the doctrine of equitable

estoppel in the arbitration context, its application would not be appropriate in this case.").

Although Casa Arena contests estoppel on the grounds that Casa Arena and THI of

Baltimore have been consistent with their position that THI of Baltimore is not a party, see Response

at 9, this argument misses the point.  Equitable estoppel in this context focuses on the

interdependence of misconduct and exploitation of an arbitration agreement.  Estoppel here might

best be understood as involving consistency in deed, rather than consistency in word.

Nevertheless, the Court cannot say here that THI of Baltimore would be estopped.

Thompson relies on two theories of estoppel: (i) knowing exploitation; and (ii) substantial

interdependence of misconduct.  THI of Baltimore does not seem to have exploited the Admission

Contract or arbitration clause.  The benefits that flow from such contracts to Casa Arena and then

indirectly to THI of Baltimore would not be sufficient.  Such a principle would make almost every

owner or corporate parent subject to a subsidiary's arbitration clauses because almost every owner

or corporate parent has subsidiaries because of the profit they generate.  Nor does THI of Baltimore

gain the benefit of avoiding litigation because of the Admission Contract.  Thompson contends that

THI of Baltimore has the benefit of "avoiding any claims . . . that might be brought directly against

THI of Baltimore by asserting that it falls within the definition of **employer, agent, or**

**representative** of Casa Arena."  Response at 13 (emphasis in original).  The Admission Contract,

however, refers to "employees," not employers, and it seems a stretch to characterize a corporate

owner as an agent or representative rather than a principal in most situations.

Thompson appears to have a stronger case under the substantial misconduct prong, but the

Court still cannot say that THI of Baltimore should be estopped.  The extent to which THI of

-46-

Baltimore should have been responsible for correcting policies at Casa Arena and the degree to which that alleged misconduct is intertwined with Casa Arena's alleged misconduct is a heavily fact-driven inquiry.  Moreover, in general, even courts that have applied estoppel have been reluctant to estop non-signatories.  Instead, estoppel has usually been allowed when a non-signatory seeks to arbitrate a claim against a signatory and the signatory seeks to avoid it.  See Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d at 779 (noting that in other cases courts have "held that the parties were estopped from avoiding arbitration because they had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves. . . . [A non-signatory, however,] cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists.").  Ultimately, "[c]ourts that apply the doctrine of equitable estoppel do so to avoid rendering meaningless the purpose of the signatories['] agreement, an arbitration, in the absence of a non-signatory." Murken v. Suncor Energy, Inc., 138 N.M. at 183, 117 P.3d at 989 (internal quotation marks omitted)(apostrophe added by Murken v. Suncor Energy, Inc.).  The Court cannot say here that arbitration would be a hollow exercise without THI of Baltimore's involvement.

In sum, although the Court does not decide these issues, the Court's review of the underlying merits of Thompson's claim that THI of Baltimore should be compelled to participate in arbitration indicates that such a claim might not be successful.  The potential futility of Thompson's claim strengthens the conclusion that rule 60(b)(6) relief should be granted here.  Although the situation is an unfortunate one, the circumstances here are not extraordinary and compelling enough for the Court to reopen this case.

## III.   **THE COURT WILL NOT GRANT LEAVE TO AMEND.**

In the alternative to the Court ordering THI of Baltimore to participate in arbitration,

Thompson requests that the Court grant him leave to amend his Complaint.  Thompson concedes that the statute of limitations has run on his wrongful-death claim against THI of Baltimore. Thompson argues that he must therefore amend his original Complaint so that his new complaint will relate back to that original Complaint.  While Thompson requests this relief in the alternative, the Court cannot properly grant  the requested relief without reopening the case.  Because the Court dismissed the case, there is no pending Complaint to be amended and nothing for a claim against THI of Baltimore to relate back to.  Because the Court will not reopen the case for the purpose of ordering THI of Baltimore to arbitrate, the Court will not reopen the case for the purpose of allowing Thompson to amend his old Complaint and for the same reasons: (i) the predicament is Thompson's fault; (ii) THI of Baltimore's relative lack of fault; and (iii) the alternative relief potentially available to Thompson.

Although there appears to be little law on whether a case must be reopened to allow relation back to a dismissed complaint, the Court concludes that reopening is necessary.  The plain language of rule 15 refers to "amendments" to pleadings.  Fed. R. Civ. P. 15(c)(1).  When a complaint has been dismissed, there is nothing to amend.  There is no complaint.  Allowing amendment of a dismissed complaint would also evade the specific grounds, such as rule 60(b), that the Federal Rules of Civil Procedure have established for court action on cases in which final judgment has been entered.  Given the strong public interest in the finality of litigation, the Court will not increase the ways that are available for avoiding final judgments without stronger legal justification.

The Tenth Circuit's case law supports this conclusion.  The Tenth Circuit has held that, when a plaintiff seeks to amend a complaint after a court grants a motion to dismiss, the plaintiff first must have the case reopened under rule 59(e) or rule 60(b).  See Calderon v. Kan. Dep't of Soc. and Rehabilitation Servs., 181 F.3d at 1185; Glenn v. First Nat. Bank in Grand Junction, 868 F.2d 368,

371 (10th Cir. 1989).  Casa Arena has cited <u>Calderon v. Kan. Dep't of Soc. and Rehabilitation Servs.</u> for the principle that, before the Court can order THI of Baltimore into arbitration, Thompson must succeed on both a rule 60(b) and a rule 15 motion.  Thompson argues that Casa Arena's interpretation of "this narrow rule mentioned in dicta . . . is contrary to clearly established law."  Reply at 4.  Whatever the merits of Thompson's criticism that amendment is necessary to compel THI of Baltimore to arbitrate, <u>Calderon v. Kan. Dep't of Soc. and Rehabilitation Servs.</u> indicates that amendment to a dismissed complaint is not allowed unless the case is first reopened.  The Court does not see any difference between a case dismissed under rule 12(b)(6) and a case dismissed pursuant to an order compelling arbitration that would make reopening the case unnecessary in the latter situation.

Moreover, just as the Court has briefly considered the underlying merits for compelling arbitration, a review of the merits of amending the Complaint also indicate that such relief might be futile.  Rule 15(c) allows an amendment to relate back and thus avoid the statute of limitations' cutting off a claim.  Thompson, however, was aware of THI of Baltimore within the statutory period, but failed to bring suit against it.  Thompson filed a Motion to Amend, but did not seek reconsideration of the Court's Final Judgment or order compelling arbitration, and did not appeal.  The case the Defendants cite, <u>Wandrey v. Service Business Forms, Inc.,</u> is not directly on point.  In <u>Wandrey v. Service Business Forms, Inc.,</u> the plaintiff was aware of the prospective defendant in the statutory period but failed to name him.  <u>See</u> 762 F.Supp. at 302-03.  Here, Thompson knew of THI of Baltimore before the statute of limitations ran, and filed a Motion to Amend in time.  Thompson, however, failed to follow through on that motion when the Court ordered arbitration without addressing the pending Motion to Amend.  Such a failure would relate to the Court's discretionary ability to grant or deny leave to amend after the period for amendment as of right has

expired.  See Wandrey v. Service Business Forms, Inc., 762 F.Supp. at 302-03.  It therefore may be

that amendment would not be appropriate despite the distinction between this case and the situation

in Wandrey v. Service Business Forms, Inc.  The Court will thus deny leave to amend, in part

because the relation-back doctrine many not apply here, but more importantly because amendment

of Thompson's Complaint would require reopening the case, which the Court has concluded is not

appropriate.

     **IT IS ORDERED** that the Plaintiff's Motion for Rule 60(b) Relief, Motion to Compel

Arbitration, or Alternatively Motion for Leave to File Complaint for Wrongful Death is denied.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

T.A. Sandenaw, Jr.
CaraLyn Banks
Sandenaw & Anderson, P.C.
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

RaMona G. Bootes
Christopher J. DeLara
Guebert Bruckner & Bootes PC
Albuquerque, New Mexico

-- and --

Timothy L. Fields
Christin M. Heyns
Michael B. Neill
Modrall Sperling Roehl Harris
  & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*